THOMPSON et al. v. NORTH TEXAS NAT. BANK.

No. 1438—5653.

Commission of Appeals of Texas, Section A. April 15, 1931.

Worsham, Rollins, Burford, Ryburn & Hincks, Saner, Saner & Jack, and I. M. Williams, all of Dallas, and Tom Whipple, of Waxahachie, for plaintiffs in error.

Thomas, Storey & Grady, of Dallas, for defendant in error.

CRITZ, J.

This suit was begun in the district court of Dallas county by North Texas National Bank against D. G. Thompson, R. K. Erwin, I. M. Williams, Mrs. Ella K. Gibson, and W. J. Rutledge, trustee in bankruptcy of Texas Mortgage Company, a corporation. Later Rutledge, trustee, was dismissed. The case was tried with a jury, but at the conclusion of the evidence the court peremptorily instructed a verdict in favor of D. G. Thompson, Mrs. Ella K. Gibson, and I. M. Williams. The court also peremptorily instructed a verdict in favor of the bank against R. K. Erwin. The jury returned a verdict as instructed, and judgment was entered accordingly. The reason for the instructed verdict against Erwin does not concern us, as he did not appeal therefrom. The North Texas National Bank appealed to the Court of Civil Appeals at Dallas, which court originally reversed the judgment of the district court in favor of Thompson, Mrs. Gibson, and Williams, and rendered judgment against them for the bank, but on rehearing this judgment was changed so as to remand the cause for a new trial. 23 S.W.(2d) 494. The case is in the Supreme Court on writ of error granted on application of Thompson, Mrs. Gibson, and Williams.

It appears from the record that on July 29, 1921, T. J. Cole, I. M. Williams, D. G. Thompson, R. K. Erwin, and Mrs. Ella K. Gibson, all stockholders and directors of Texas Mortgage Company, executed and delivered to the Southwest National Bank of Dallas, Tex., the following instrument of guaranty.

"Limited Guaranty

"For the sum of One Dollar ($1.00) and other valuable consideration, I, we, or either of us, jointly and severally, guarantee the payment and agree and promise to pay at Dallas, Texas, to the Southwest National Bank of Dallas, its successor, successors or assign, at maturity or at any time thereafter as demanded by it, all notes, discounts, overdrafts and any and all indebtedness or obligation,

whether joint or several, or both, or primary or secondary, contract of tort, for which The Texas Mortgage Company of Texas, Dallas, Texas, is, or are, now, or hereafter may become, liable or indebted to the Southwest National Bank of Dallas, its successor, successors or assign, provided, however, that my or our liability hereunder shall not exceed the sum of Twenty Thousand Dollars ($20,000.00), and the payment of said sum of Twenty Thousand Dollars ($20,000.00) under this contract to said Southwest National Bank of Dallas, its successor, successors or assign, by the subscriber or subscribers hereto, such payment to be applied to the indebtedness of the principal debtor as may be determined by the Southwest National Bank of Dallas, its successor, successors or assign, shall satisfy and discharge the obligation of this instrument.

"I, we, and each of us hereby waive notice of acceptance of this guaranty and all other notices in connection herewith, or the indebtedness or obligation guaranteed thereby and waive diligence, presentment, notice, protest and suit on the part of the bank, its successor, successors or assign, in the collection of any indebtedness or obligation hereby guaranteed. This guaranty is a continuing one and shall continue to apply without regard to the form or amount of the indebtedness or obligation guaranteed, which the bank, its successor, successors or assign, may create, renew, extend or alter, in whole or in part, without notice to the undersigned from time to time as it may elect without affecting the obligation of this guaranty, and it is hereby expressly agreed that the bank, its successor, successors or assign, may surrender, release, exchange or alter any collateral or other security held by it for the claims hereby guaranteed, either in whole or in part, without affecting the obligation or liability of the undersigned on this guaranty, and this guaranty shall be and continue effective notwithstanding any legal disability of the principal debtor to incur the indebtedness or obligation, in whole or in part.

"This instrument shall bind me, us, and each of us, severally and jointly, until the Southwest National Bank of Dallas, its successor, successors or assign, shall have received notice in writing, that the subscriber hereto giving such notice elects to be no longer bound by this guaranty, after which time this instrument shall bind the subscriber hereto giving such written notice only as to the indebtedness or obligation then existing and renewals or extensions in whole or in part of the then existing indebtedness or obligation, but shall continue in full force and effect at the option of the bank, its successor, successors and assign, as to all other subscribers hereto not giving such written notice."

After the execution and delivery of the above instrument of guaranty, the mortgage company became indebted to the Southwest National Bank in the sum of $4,000, evidenced by a negotiable promissory note. This note was an asset of such bank and unpaid on May 13, 1925. On or about this last-named date the Southwest National Bank and North Texas National Bank entered into the following written contract:

"This agreement, this day made and entered into by and between the Southwest National Bank of Dallas, Texas, hereinafter styled party of the first part, and North Texas National Bank of Dallas, Texas, hereinafter styled party of the second part, witnesseth;

"That the party of the first part does hereby sell, assign and agree to deliver any and all of the assets of any kind, character and description except its corporate name and charter, unto the party of the second part, hereby authorizing, empowering and directing the President, either of the Vice-Presidents, or the Cashier of the party of the first part to transfer by endorsement, all notes, bills of exchange or other evidence of debt owned by the party of the first part, unto the party of the second part; to execute and deliver all and any deeds or other instruments necessary to convey title to any real estate owned by party of the first part unto party of the second part, and to transfer and deliver all bank balances due from other banks by means of drafts and all means, and to deliver all cash, checks, or equivalent of money owned by party of the first part unto party of the second part, it being the intention of this agreement to sell, transfer and deliver by any and all means all of the assets of the party of the first part, except its corporate name and charter, unto the party of the second part.

"2. That in consideration that the party of the first part shall and does sell, assign and deliver all of the assets of every kind, description and character, its corporate name and charter alone excepted, unto the party of the second part as hereinafter set out.

"Now, therefore, party of the second part does hereby assume all of the liabilities of the party of the first part, except its liability to its shareholders; and party of the second part hereby further agrees to select from the assets of the party of the first part a sufficient amount of assets to equal in value the liabilities assumed by party of the second part.

"The party of the second part shall hold all assets taken over under this transfer from the party of the first part over and above the total selected as hereinbefore provided and set up on its books to offset all liabilities of record except to shareholders of the party of the first part; that said assets shall be so held for a period of one year from the date of transfer to indemnify it in assets set up

on its books and to guarantee it against loss thereon for said period of one year; that party of the second part shall have the power of substitution and the privilege of exchange between the assets set up on its books and the residue of assets taken over from party of the first part; that after the expiration of one year from the date of this transfer, the party of the second part agrees to deliver to such duly appointed liquidating agent as may be selected by party of the first part, all remaining assets taken over from the party of the first part and above what shall have been at that time permanently accepted by party of the second part equal in value to the amount of liabilities of record assumed by party of the second part, said remaining assets to become the property of the share-holders of the party of the first part, to be further administered and distributed by the duly appointed liquidating agent of party of the first part for the use and benefit of its shareholders."

After the execution of the above contract, and by virtue thereof, the North Texas National Bank became the owner of the above $4,000 note. This note was delivered to the North Texas National Bank, together with the contract of guaranty. Later the Texas Mortgage Company paid the $4,000 note to the North Texas National Bank.

On February 1, 1926, after the above $4,-000 note had been discharged, the North Texas National Bank loaned Texas Mortgage Company $20,000, evidenced by the note here sued on. The North Texas National Bank relies on the contract of guaranty above set out as the basis of its suit against the signers of such guaranty contract.

It appears from the undisputed record that the Southwest National Bank was a banking corporation doing business at Dallas, Tex., prior and up to about the time the contract between it and the North Texas National Bank was entered into. On Saturday night after the contract between the two banks was signed the Southwest National Bank ceased active business as a bank, and on the following Monday morning the North Texas National Bank opened its doors for business in the house formerly occupied by the South-west National Bank. The business went forward without any intermission. The North Texas National Bank paid the obligations of the Southwest National Bank, including the checks drawn on the Southwest National Bank, and honored all deposit slips and pass-books of the Southwest National Bank. In fact the new bank took up where the old bank had left off, and fulfilled the obligations of the old bank as to depositors and all other matters. The Southwest National Bank ceased to do a banking business and went into liquidation. The Southwest National Bank, however, retained its corporate char-ter and name. Furthermore, at the expira-

tion of the year provided in the contract the North Texas National Bank selected the as-sets of the Southwest National Bank it chose to keep under the provisions of the above con-tract and delivered back to the Southwest National Bank the remaining assets amount-ing to about $2,000,000 in face value, but only about $200,000 in actual value.

For convenience we shall hereafter refer to the Southwest National Bank as the first bank and the North Texas National Bank as the second bank.

From the statement we have made it is evi-dent that the second bank asserts its right of recovery in this case on the ground that it, under the facts and circumstances of this case, is a successor and assign of the first bank within the meaning of the contract of guaranty. The Court of Civil Appeals up-holds this contention, and in doing so also holds that the rule of strict construction does not apply to a compensated surety.

Thompson et al. contend that the guaranty contract is not assignable except in so far as it may secure an existing indebtedness in the hands of the first bank. In this connection it contends that the contract under the facts and circumstances of this case only secured the existing indebtedness owed to the first bank at the time the assets of the first bank were assigned to and taken over by the sec-ond bank.

The guaranty contract by its very plain and express terms is to the first bank, its succes-sors and assign. It expressly states that it is a continuing contract and applies without regard to form, amount, etc., to any indebt-edness which the bank, its successor, succes-sors, or assign may create, renew, extend, or alter, in whole or in part.

The contract expressly states that it is for the benefit of the first bank, and its succes-sors and assign. It then by its very plain terms gives the successor and assign exactly the same rights that are given to the first bank. In this connection it expressly gives the successor and assign the right to create a new debt. If it only applied to the first bank and its successors and assign to the ex-tent of a debt created in favor of the first bank, the provision that it applies to the first bank, its successor and assign, as to debts to be created, would be rendered meaningless. In other words, the instrument by its very terms provides that it can be taken by a suc-cessor or assign of the first bank, and the successor or assign is given exactly the same rights that the first bank is given, not only as to extensions, renewals, and alterations, but as to the right to create an obligation.

When we come to consider the last clause of the instrument, the above construction is doubly fortified and rendered absolutely free from doubt. This clause expressly provides that it binds the signers jointly and severally

until the first bank, its successor or assign, shall receive notice in writing that the signer giving the notice elects to be no longer bound. It is then provided that, after the giving of such notice, the signer giving the notice shall only be bound for existing obligations, and renewals and extensions thereof, but that the obligation shall continue in full force, at the option of the bank, its successor, successors, and assign, as to all subscribers not giving the notice. Here the contract by its express terms gives the first bank, and also its successors and assigns, the right to continue to make loans on the guaranty contract and bind the signers jointly and severally until they give the notice therein provided. The contract by its express terms provides for this notice to be given to the successors or assign as well as to the first bank. If the successor or assign has no right to make a loan or create a debt secured by the contract, then the requirement that the successor or assign be given the notice is an idle and vain provision, and the stipulation that the contract shall continue to bind those not giving the notice to the first bank, its successors or assigns, would mean nothing.

■ From what we have said it is evident that the contract of guaranty is not so worded that it is personal alone to the first bank as to the right to create a debt, but by its very plain language it gives the first bank the power to transmit to a successor or assign the right to act under such contract, the same as the first bank, and thus give a successor or assign an equal right to create a debt which the first bank had. This is the only construction this contract can be given, whether it be strictly or liberally construed with reference to the rights of the signers. In other words, the contract in plain and unambiguous language gives the first bank the right to transmit to a successor or assign all rights possessed by the first bank.

If the second bank came into possession of the guaranty contract as a successor or assign of the first bank, and made the loan to the Texas Mortgage Company relying on the guaranty contract, and in pursuance thereof, then the guarantors are liable and bound to the second bank the same as if the loan had been made by the first bank. The record is conclusive that the second bank made the loan in pursuance of and relying on the guaranty contract. We shall therefore proceed to determine whether the second bank is a successor or assign of the first bank.

The word "successor" is defined by Webster's New International Dictionary to mean "one that succeeds or follows; one who takes the place which another has left, and sustains the like part or character; one who takes the place of another by succession," etc.

In International & G. N. Co. v. Smith County, 65 Tex. 21, cited by the Court of Civil

Appeals in the instant case, it is shown that the state, by legislative act, granted a railway company exemption from taxation for a certain number of years. The exemption was in favor of the railroad company named, its successors and assigns. The properties involved which belonged to the railroad particularly named in the act were subsequently sold to another company. Smith county and its officers attempted to collect the taxes on such properties in the hands of the purchasing company, contending among other things, that the sale worked a relief of the exemption, because the same was a personal privilege to the original company and not its assign. Our Supreme Court speaking through Judge Stayton rejected this contention and held that the words "successors and assigns," as used in the statute meant whomsoever should succeed to the property and corporate rights of the company, to whom the exemption was given.

The word "successor," as used in an ordinary deed to a corporation, of course, has a definite meaning by force of the very character of the instrument.

■ From the discussion it is evident that the general meaning of the word "successor" is defined by Webster, supra. However, the exact meaning as applied to a contract wherein the word is used must depend largely on the kind and character of the contract, its purposes and circumstances, and the context.

When we come to consider the guaranty contract in the light of its attendant circumstances, and its own tenor and wording, we find that all of the signers were stockholders and directors in a corporation which desired to establish a line of credit for the corporation. They all executed a contract which by its very terms inured to the benefit of the successor of the bank to which it was delivered, and by its very terms was assignable. It is shown that the first bank to which it was given decided to cease business, and to liquidate its assets. To consummate this purpose the first bank entered into a contract with the second bank by the terms of which the first bank conveyed to the second bank all of its assets, "of every kind, character and description," except its name and charter. The second bank assumed all of the liabilities of the first bank of every kind and description, except to its stockholders. In consummating the contract between the two banks, an actual physical delivery of all of its properties, papers, books, and records, and all other property of every character and description took place. The second bank took over all of the deposit accounts of the first bank, and continued the business at the same place just as though there had been no change in ownership. The checks drawn on the first bank were honored by the second bank, and in fact as far as the transaction of the business

was concerned the change in ownership had no effect on the customers of the bank. The $4,000 note of the mortgage company guaranteed by the contract here sued on was actually delivered to the second bank. Also the contract of guaranty was actually delivered to the second bank. The fact that the second bank had taken over the first bank was open and notorious, as also was the fact that the first bank had ceased business.

We think under the above facts and circumstances the second bank was the successor of the first bank within the meaning and contemplation of the contract of guaranty.

We are further of the opinion that the contract between the two banks, together with the attendant circumstances, demonstrate conclusively and as a matter of law an assignment of the contract of guaranty. The contract between the two banks expressly provides that the first bank sells and delivers to the second bank all of its assets of every kind and character, etc. If the guaranty contract was an asset in the hands of the first bank within the meaning of the contract between the two banks, it was certainly assigned by the second bank. It is certain that the bank so understood the contract, for they made an actual physical delivery to the second bank of this contract, together with absolutely everything the first bank owned. In other words, the two banks themselves demonstrated that they intended the contract to operate as a transfer of all rights owned or held by the first bank except its name and charter. Finally, were a controversy to arise between the banks as to who was the holder of this contract under the facts of this record, no court would hold that the first bank still held or owned the same.

Thompson et al. also contend that, even if it be conceded that the second bank is a successor or assign of the first bank, still they are not bound in the instant suit because the second bank never notified them of its acceptance of the guaranty contract. If it be conceded that a guaranty of this nature ordinarily requires acceptance, still the instant contract expressly waives notice of acceptance in the following language: "I, we, and each of us hereby waive notice of acceptance of this guaranty, and all other notice in connection herewith," etc.

This waiver, under the terms of the instrument cannot be construed as personal alone to the first bank.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J.

The judgment of the Court of Civil Appeals reversing and remanding the cause is af-firmed, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.