The TRAVELERS INDEMNITY
COMPANY, Appellant,

v.

John P. DAHLEN, a/k/a Jack
Dahlen, Appellee.

No. 05-86-00939-CV.

Court of Appeals of Texas,
Dallas.

July 20, 1987.

Rehearing Denied Aug. 24, 1987.

Stephen L. Baskind, Janice L. Crosby, Dallas, for appellant.

Thomas P. Earls, Dallas, for appellee.

Before WHITHAM, ROWE and HECHT, JJ.

ROWE, Justice.

This is a suit on an indemnity agreement. The Travelers Indemnity Company (Travelers), as surety, for the benefit of its principal, Texas Business Travel, Ltd. (Texas Business), issued a bond to Air Traffic Conference of America (ATC), as obligee, covering the obligations of Texas Business to remit for its airline ticket sales in compliance with the ATC Passenger Sales Agreement. In consideration for the execution of this bond, Texas Business and John P. Dahlen, as joint indemnitors, executed an indemnification agreement in favor of Travelers. Airlines Reporting Corporation

(ARC) subsequently took on all functions of ATC. Thereafter, Texas Business defaulted on ticket sales remittances being handled under an Agent Reporting Agreement promulgated by ARC. When ARC demanded satisfaction under the Travelers' bond, Travelers obliged and by this suit sought full reimbursement from Dahlen. Dahlen denied liability under his indemnification agreement, claiming the bond in question did not cover obligations owed by Texas Business to ARC under the ARC Agent Reporting Agreement. Upon motions for summary judgment filed by both parties, the trial court granted a take nothing judgment in favor of Dahlen, and Travelers appealed. Because the summary judgment evidence raises material issues of fact with respect to the liability of the parties under the bond, we reverse and remand for trial on the merits.

In three points of error, Travelers contends that the trial court erred: (1) in not granting summary judgment for Travelers because its contractual right of recovery against Dahlen was established as a matter of law; (2) in granting summary judgment for Dahlen because the mere change in obligees did not alter the surety's obligation under the bond so materially as to relieve an indemnitor of liability as a matter of law; and alternatively (3) in granting summary judgment for Dahlen because Travelers' summary judgment evidence raised material fact issues concerning Dahlen's liability to Travelers under the indemnity agreement, notwithstanding the change in obligees under the surety bond. Dahlen's three counterpoints dispute these contentions on the merits, but Dahlen also interjects a procedural irregularity which somewhat limits our appellate review. Dahlen notes from the record that although the trial court heard both summary judgment motions on May 8, 1986, and announced its determination thereof orally on May 9, 1986, Travelers filed, without leave of court, a twenty-nine page amended petition on June 10, 1986, which contained numerous new documentary exhibits. Further, on June 10, 1986, Travelers filed a thirty page motion for rehearing and motion for new trial supported by a fresh affidavit and multiple exhibits. On June 16, 1986, the trial court signed and entered its written final order disposing of those motions heard on May 8, 1986. Later, on July 21, 1986, after reviewing "the timely-filed summary judgment evidence," the trial court denied Travelers' motions filed June 10, 1986, which were considered together as a motion for new trial. Because nothing appears of record indicating that the trial court either granted leave to file an amended petition or considered any documentary evidence filed on June 10, 1986, our decisional process herein relates solely to those pleadings, affidavits, and exhibits appearing of record as being before the court on May 8, 1986. *INA of Texas v. Bryant*, 686 S.W.2d 614, 615 (Tex.1985). Also, in our decisional process we apply those well-established rules applicable to appellate review of summary judgment motions. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

By way of background, we recount the following from Travelers' operative petition:

The entity, Air Traffic Conference of America, was a division of the Air Transport Association of America ("ATA"), an unincorporated trade association whose membership is comprised of many of the United States air carriers. The ATA was given the authority by Congress, through the Civil Aeronautics Board, to regulate the distribution of air traffic documents in interstate commerce. The ATC administered a comprehensive agreement, implemented by the ATA, for the issuance of air traffic documents to travel agencies and the collection of funds generated by the sale of air traffic documents. However (because of deregulation and the dissolution of the Civil Aeronautics Board), as of December 31, 1984, the ATC closed operation on behalf of ATA. At that time, the ARC, as successor in interest to ATC, assumed all of the duties and responsibilities of the ATC. (The function of ARC remained the same as ATC. The employees of ATC became employees of ARC, per-

forming the same tasks as they did with ATC). The basic agreement by which the ATC and/or ARC operated, is the Sales Agency Agreement which is executed by each travel agent.

Additionally, upon ARC's becoming a successor in interest to ATC, The Executive Secretary of ATC, executed a Special Power of Attorney which assigned all of its right, title, and interest in every matter arising out of the ATC Passenger Sales Agency Agreement or the ATC Agency (sic) Reporting Agreement, so that ARC could pursue any claim which ATC could have pursued.

While ATC was still in operation, Travelers issued to Texas Business, as "Principal," the surety bond in question. In connection with the bond's issuance, the principal and Dahlen, individually, signed the indemnification agreement in question. The "Obligee" of the bond was designated originally as being the "Air Traffic Conference of America (hereinafter called the Obligee) as agent for and on behalf of any airline member of the Obligee contracting with the Principal." The obligation of the surety (Travelers) as expressed in its bond, subject to certain limitations not material to this appeal, is as follows:

NOW THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH that if the Principal shall duly comply with the provisions of said ATC Passenger Sales Agency Agreement with respect to remittances to the Obligee as in said Agreement provided, then this obligation is to be void, otherwise to remain in full force and effect in law.

The obligation of the indemnitors (the principal and Dahlen, individually) as expressed at the heel of a separate bond application form is as follows:

In consideration of the execution by Travelers (hereinafter called Company) of the bond herein applied for, the undersigned hereby agree ... SECOND, to indemnify the Company against all loss, liability, cost, damages, attorneys fees, and expenses whatsoever which the Company may sustain or incur by reason or in consequence of having executed said

bond; and any modifications, renewals, or extensions thereof ...

On December 27, 1984, Travelers signed a rider evidencing the fact that the Obligee was being changed, effective December 31, 1984, to "Air Conference of America (ATC) as agent for and on behalf of each airline signatory to the ATC Passenger Sales Agreement and/or Airlines Reporting Corporation (ARC) on behalf of itself and as agent for and on behalf of each airline signatory to the ARC Carrier Services Agreement." Further, the rider added the ARC Agent Reporting Agreement to the meaning of the term "ATC Passenger Sales Agency Agreement." Neither the ATC Passenger Sales Agency Agreement nor the ARC Agent Reporting Agreement appear in this record. The record does include complete copies of: (1) The Assignment of Right, Title, and Interest from ATC to ARC with respect to both sales agency agreements, (2) the surety bond (presumably No. 980F7412) issued by Travelers effective August 28, 1984, together with a rider thereto dated December 27, 1984, and (3) the indemnification agreement with respect to bond No. 980F7412 executed by Texas Business and Dahlen.

The gravamen of Dahlen's defense is that because the loss Travelers paid on the bond claim included only remittances becoming due after December 31, 1984, to ARC (and not to ATC) under the ARC Agent Reporting Agreement (and not under the ATC Passenger Sales Agency Agreement), the loss fell completely outside the boundaries of his indemnification agreement. Sometimes Dahlen formulates this defense as one falling under a legal principle that the substitution of one obligee for another discharges the surety. Dahlen notes in this regard that the original obligee (ATC) is an unincorporated trade association whereas the substituted obligee (ARC) is a corporation.

■ For purposes of this appeal, to properly fix the liability of the parties between themselves, we must assess the legal effect which the substitution of ARC, as obligee, has upon coverage under the bond. In making this assessment, we find no prece-

dential guidance in the Texas cases. Since it is apparent, however, that Dahlen unquestionably has agreed to fully protect Travelers against any detriment under the bond as originally written, then a basic inquiry must be made concerning what liability Travelers has to ARC under the bond as originally written. Travelers states in its brief that "it was obligated to pay ARC, the substituted Obligee, even if no Rider had been attached to the Bond." By reading between the lines, we glean that Travelers was agreeable to executing the Rider, and claims not to have prejudiced Dahlen thereby, because the Rider added nothing to Travelers' obligation. Unfortunately, the record before us lacks two necessary ingredients to support this contention: (1) the sales agency agreement under which Texas Business was obligated to remit to ATC, and (2) the sales agency agreement under which Texas Business was obligated to remit to ARC. A review of these documents is mandated because, as to this matter of first impression in Texas, we agree with Travelers that the preferred legal principle to be applied here is the one promulgated by the American Law Institute in its Restatement of the Law of Security § 128 (1941). If specifically adapted to the facts in this record, Section 128 would read as follows:

> Where, without the consent of Travelers (the surety), Texas Business (the principal), and ATC (the creditor) modify their contract otherwise than by extension of time of payment ... Travelers (the compensated surety) is discharged if the modification materially increases its risk *and is not discharged if the risk is not materially increased,* but its obligation is reduced to the extent of loss due to the modification.[1]

(emphasis added)

Section 128 was directly sanctioned in *Anstalt v. F.I.A. Insurance Company,* 749 F.2d 175 (3rd Cir.1984), wherein a compensated surety had issued a performance bond covering the contractual obligation of a seller of cigarettes to supply a certain quantity of cigarettes to an obligee and where prior to the delivery of any cigarettes that obligee assigned its rights to another obligee. In *Anstalt* the court indicated that a compensated surety will not be discharged from its obligation because of an alteration in the underlying contract that is not material and that does not increase the surety's risk or otherwise cause it injury. *See Anstalt,* 749 F.2d at 180. Buttressing this principle is a corollary that, absent a prohibition against assignment, an obligee may assign its rights under a surety bond if the assignment does not otherwise prejudice the surety's rights. *See Ampex Credit Corporation v. Bateman,* 554 F.2d 750, 753–54 (5th Cir.1977).

■ Under the above legal principle and its corollary, ARC may or may not have rights under the bond depending upon how comparable are the provisions of Texas Business' sales agency contract with ATC and the provisions of Texas Business' sales agency contract with ARC. Conclusory statements in the summary judgment affidavits that the functions of ARC remained the same as those of ATC and that ARC succeeded to all the rights and obligations of ATC are insufficient to establish as a matter of law either the materiality or the immateriality of changes wrought in the underlying risks to the surety by substitution of obligees. The mere substitution of an incorporated obligee for an unincorporated obligee is not fatal to liability. Whether that modification was material or immaterial cannot be determined without a comparison of the obligations under the original and the substituted sales agency contracts. Because a fact issue exists with respect to the materiality of that modification which occurred, the trial court properly denied summary judgment for Travelers but improperly granted summary judgment for Dahlen. Accordingly, Travelers' first and second points of error are overruled, but Travelers third point of error is sus-

---

**1.** For purposes of this section, a "compensated surety" means "a person who engages in the business of executing surety contracts for a compensation called a premium, which is deter- mined by a computation of risks on an actuarial basis. Compensated sureties are generally incorporated." *See* Restatement of the Law of Security § 82 (1941).

tained. We reverse the trial court's judgment and remand the cause to the trial court for further proceedings consistent with this opinion.