A95A2808. TRST ATLANTA, INC. v. 1815 THE EXCHANGE, INC. et al.
A95A2809. 1815 THE EXCHANGE, INC. v. TRST ATLANTA, INC.
(469 SE2d 238)

McMURRAY, Presiding Judge.

Plaintiff TRST Atlanta, Inc. ("TRST Atlanta"), a Texas corporation owned by the Teacher Retirement System of Texas, brought this action for breach of contract and negligent construction against defendant 1815 The Exchange, Inc., formerly known as Barge-Wagener, Inc. ("Barge-Wagener"). According to the complaint, on April 11, 1988, "Barge-Wagener as general contractor, and Club Tower L.P. as owner, entered into a written contract ([the] 'contract') for the construction of a forty-story high-rise apartment building . . . [in Midtown] Atlanta, Georgia, . . . known as Club Tower."

Barge-Wagener allegedly "fail[ed] to perform [certain] construction work in accordance with the plans and specifications. . . ." Alternatively, "Barge-Wagener failed to exercise that degree of care and skill ordinarily exercised by competent contractors. . . ."

Defendant St. Paul Fire & Marine Insurance Company ("St. Paul"), is allegedly jointly and severally liable for any damages caused by Barge-Wagener, pursuant to a performance bond ("the bond"), executed with "Barge-Wagener as principal, and St. Paul as surety, . . . in favor of Club Tower L.P. as obligee, . . . conditioned on Barge-Wagener's prompt and faithful performance of the Contract." TRST alleged it was the "successor in interest to Club Tower L.P. with respect to the Contract and the Bond."

Defendants jointly answered, denying the material allegations. After discovery, they filed a joint motion for summary judgment.

Barge-Wagener contended that plaintiff's claims against it were barred by an "anti-assignment provision of the Club Tower construction contract [. . . and because Barge-Wagener had been] released by Plaintiff's assignor." St. Paul contended, inter alia, that plaintiff "is not a 'successor' of the original obligees on the performance bond[; . . . that plaintiff's claim] is barred by the two-year [period] of [limitation] contained in the performance bond[; and . . . St. Paul had been] released by Plaintiff's assignor." The performance bond issued by St. Paul contains the following provisions: Barge-Wagener as principal and St. Paul as surety bound "themselves, their heirs, executors, administrators, successors and *assigns*, jointly and severally," unto Club Tower L.P. as the owner-obligee, for payment and performance of the Contract to build. (Emphasis supplied.) But the bond expressly provides: "No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the heirs, executors, administrators or *successors* of Owner." (Emphasis supplied.)

The trial court granted St. Paul's motion for summary judgment but denied that of Barge-Wagener. In Case No. A95A2808, plaintiff appeals from the grant of summary judgment to St. Paul. In Case No. A95A2809, Barge-Wagener cross-appeals from the denial of its motion for summary judgment. *Held:*

*Case No. A95A2808*

1. The trial court concluded that plaintiff was only an assignee of Club Tower L.P. and not its successor, and, as a consequence, ruled that plaintiff was not authorized to recover against St. Paul on the performance bond. Plaintiff enumerates the grant of summary judgment to St. Paul as error, arguing alternatively that "TRST [Atlanta] is the 'successor' to Club Tower L. P., the obligee named in the Bond," or that it may nevertheless maintain a claim as an assignee of the bond's obligee. We disagree.

" '(The term "successor") means, ordinarily in the case of a corporation, another corporation which by a process of amalgamation, consolidation, or duly authorized legal succession has become invested with the rights and has assumed the burdens of the first corporation.' *Hanna v. Florence Iron Co.*, 118 NE 629, 631-632 (N. Y. 1918). '(A) legal assignment is a transfer or setting over of property, or of some right or interest therein, from one person to another, and unless in some way qualified, it is properly the transfer of one whole interest in an estate, chattel, or other thing.' (Punctuation and citation omitted.) *Hunter-Wilson Distilling Co. v. Foust Distilling Co.*, 84 FSupp. 996, 1000 (M.D. Pa. 1949). Clearly, the words 'successors' and 'assigns' have different meanings. . . . [In the case sub judice, there is no evi-

dence of a duly authorized legal succession by which plaintiff has become invested with the rights and has assumed the burdens of Club Tower L.P. Consequently, St. Paul's] surety contract specifically excludes [plaintiff TRST Atlanta], as [a mere] assignee of the obligee, from a right of action on the [bond]." *Southern Patrician Assoc. v. Intl. Fidelity Ins. Co.*, 191 Ga. App. 106, 107 (381 SE2d 98). Although plaintiff argues that this applicable and binding precedent "was wrongly decided and should be overruled," we adhere to its common-sense ruling. The trial court correctly granted summary judgment to the surety, St. Paul. This disposition renders all other contentions moot. OCGA § 5-6-48 (b) (3).

### Case No. A95A2809

2. The Teacher Retirement System of Texas, as "Permanent Lender . . . alleged a default by [Club Tower L.P. as] Borrower . . ." on the financing of the construction project. The Teacher Retirement System of Texas exercised forbearance to foreclose and "decided to accept the conveyance [of the project . . .] to TRST Atlanta. . . ." In a separate transfer, captioned "BILL OF SALE AND ASSIGNMENT," Club Tower L.P. assigned "all personal property, tangible and intangible, of every kind and nature whatsoever owned by [Club Tower L.P.] and located on and/or used in connection with the Property. . . ." Barge-Wagener enumerates the denial of its motion for summary judgment, arguing first that the assignment from Club Tower L.P. as owner to plaintiff was without Barge-Wagener's consent and was, therefore, prohibited by an anti-assignment provision in the construction contract.

The construction contract is the 1987 edition of the American Institute of Architects' "Document A101," the standard form of agreement between the owner and the contractor. The clause relied upon is incorporated through "the General Conditions of the Contract for Construction, AIA Document A201, 1987 Edition." Section 13.2.1 of the General Conditions provides in part: "Neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract."

In our view, neither the assignment of personalty nor the conveyance by general warranty deed from Club Tower L.P., as a debtor in default, to plaintiff of all of Club Tower L.P.'s ownership interest pursuant to a separate "Agreement for Deed" amounts to an assignment of the construction contract as a whole, such that the assignment clause has not been triggered. Moreover, that clause does not expressly operate to release the non-consenting party under General

Condition 13.2.1. Rather, the contractual clause at issue anticipates assignments and provides that an unconsented-to assignment does *not* release the assign*or*.

Furthermore, it appears that Barge-Wagener had already consented to an assignment for the benefit of the creditor when Barge-Wagener entered into a "General Contractor/Permanent Lender Agreement." There, Barge-Wagener acknowledged that the Teacher Retirement System of Texas had already been "granted a security interest . . . in all of [Club Tower L.P.'s] right, title and interest in, under and to the Construction Contract. . . ." This agreement expressly provided that, in the event of default by Club Tower L.P., Barge-Wagener as "Contractor shall thereafter perform under the Construction Contract in accordance with its terms, so long as the Contractor shall be paid in accordance with the Construction Contract. . . ." This enumeration is without merit.

3. The Architect issued his certification for final payment but then withdrew that certification because Barge-Wagener had "not completed the Substantial Compliance Certification punch list and its official amendments." Thereafter, Club Tower L.P. and Barge-Wagener, with others, entered into a written "SETTLEMENT AGREEMENT AND MUTUAL RELEASE," whereby Barge-Wagener agreed to correct certain items identified by the architect as incomplete or defective. Barge-Wagener contends that this agreement operates as a release of all construction claims against it, arguing that Club Tower L.P. "did *not* provide Barge-Wagener with the detailed assessment," as contemplated by the settlement agreement. We disagree.

Club Tower, L.P., agreed on behalf of itself and its assigns to release Barge-Wagener from all warranties and obligations *"except for any claims against Barge-Wagener, Inc. concerning work covered by any warranty which is still in effect, any latent defects and any work to be performed by Barge-Wagener, Inc. with respect to those items described in the Punch List letter as more specifically provided in paragraph 4. . . ."* (Emphasis supplied.) Moreover, the evidence is conflicting as to whether Barge-Wagener ever completed its obligations under this settlement agreement, as enumerated in the "Punch List Letter," and the March 19, 1991, report of a third-party construction consultant, Williams & Associates, Inc. A final engineer's report was submitted on April 26, 1994, while the parties were operating under a tolling agreement. It is undisputed that Barge-Wagener never invoked the contractual provisions to "object to the items identified in such written assessment," in response to either the March 19, 1991, report or the April 26, 1994, report. The trier of fact would be authorized to conclude that the written itemizations of incomplete or defective work are in substantial compliance with the intent of the parties to the settlement agreement. " 'Our general rule with respect

to compliance with contract terms is not strict compliance, but substantial compliance. (OCGA § 13-4-20); (Cit.) "At common law a strict and literal performance of the terms of the contract was required; but by rules of equity, either adopted by statute or recognized by the courts, a substantial compliance with the terms of the contract is sufficient. . . ." (Cit.)' *Dennard v. Freeport Minerals Co.*, 250 Ga. 330, 332 (297 SE2d 222) (1982)." *Building Materials Wholesale v. Reeves*, 209 Ga. App. 361, 362 (1), 363 (433 SE2d 346). In the case sub judice, (the cross-appeal), Barge-Wagener has failed to establish its right to be released as a matter of law. The trial court correctly denied Barge-Wagener's motion for summary judgment.

*Judgment affirmed in the main appeal, Case No. A95A2808, and also affirmed in the cross-appeal, Case No. A95A2809. Andrews and Blackburn, JJ., concur.*

DECIDED JANUARY 29, 1996 —
RECONSIDERATION DENIED FEBRUARY 13, 1996 —

*Smith & Fleming, Robert O. Fleming, Jr., David A. Rutherford,* for TRST Atlanta, Inc.

*Sutherland, Asbill & Brennan, George A. Smith, William R. Wildman, Rocco E. Testani, Lisa C. Foster,* for 1815 The Exchange, Inc.