AUGUSTA COURT CO–OWNERS'
ASSOCIATION, Appellant,

v.

LEVIN, ROTH & KASNER,
P.C., Appellee.

No. 14–96–00057–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 4, 1998.

Robert D. Green, Houston, for appellant.

Donald B. McFall, Richard A. Sheehy, Lauren L. Beck, Houston, for appellee.

Before MURPHY, C.J., and ANDERSON and O'NEILL, JJ.

### OPINION

MURPHY, Chief Justice.

This is an appeal from a summary judgment in a legal malpractice case. Augusta Court Co–Owners Association, Inc. ("the Association"), a condominium homeowners association, sued the law firm of Levin, Roth & Kasner, P.C. ("LRK"), alleging LRK failed to timely sue the surety on a standard performance bond issued for construction of the condominiums. Finding that the limitations period set forth in the performance bond expired before LRK was retained, the trial court ruled LRK did not cause the Association's injury and granted summary judgment in its favor on all causes of action. The trial court denied summary judgment on alternate grounds presented in LRK's motion. Raising five points of error, the Association appeals from the summary judgment. LRK brings three cross-points complaining of the denial of summary judgment on alternate grounds. We affirm the judgment below, but on an alternate ground.

## I. FACTUAL BACKGROUND

### A. The Augusta Court Condominium Project

In 1979, Augusta Court Associates, Ltd. ("Augusta Ltd."), a limited partnership, entered into a contract ("the construction contract") with Urban Construction Company ("Urban") for the construction of the Augusta Court Condominiums located at 1819 Augusta Drive in Houston. The project was financed by Wells Fargo Realty Advisors, Inc. ("Wells Fargo"), who retained a security interest. Aetna Casualty and Surety Company ("Aetna") issued a performance bond that named the developer, Augusta Ltd., as the owner and primary obligee, and Wells Fargo, as an additional obligee. When Augusta Ltd. encountered financial problems in late 1981 or early 1982, Wells Fargo took over the project. Although the project was substantially complete by the time of the takeover, there were allegedly numerous problems with the construction.

### B. The Default

In April 1982, Augusta Ltd. defaulted on the Wells Fargo loan. By that time, Augusta Ltd. had sold 16 of the 152 condominium units. In lieu of foreclosure, Augusta Ltd. deeded the land and improvements (including the remaining 134 units), and assigned its rights in the construction contract, to Montgomery Estates, Inc. ("Montgomery Es-

tates"), a wholly-owned subsidiary of Wells Fargo. Augusta Ltd., however, reserved any pre-assignment claims it had on the construction contract. In July 1982, Montgomery Estates conveyed the 134 units, and assigned its rights in the construction contract, to SCIW Partners, Ltd. (SCIW), a limited partnership. Montgomery Estates also conveyed the land and improvements, save for the 134 units, to the Association. Like the previous assignment, Montgomery Estates reserved any pre-assignment claims it had on the construction contract. In April 1983, Wells Fargo made final payment to the contractor, Urban. In November 1983, SCIW conveyed the 134 units and its rights in the construction contract to Augusta Court Holdings Associates ("Augusta Holdings"), a partnership comprised of SCIW and another entity.

## C. The Suit Against the Contractor

In May 1984, SCIW hired LRK to represent Augusta Holdings in a lawsuit against Urban and the architects for faulty construction and design. In January 1985, Augusta Holdings assigned its rights in the construction contract to the Association. A month later, LRK filed suit on behalf of both Augusta Holdings and the Association against Urban and the architects. In November 1985, the case was transferred to the law firm of Griggs & Harrison. In December 1986, Wells Fargo foreclosed on the 134 units and acquired ownership of those units at the foreclosure sale. Wells Fargo conveyed three units to various related entities of Wells Fargo Bank and the remaining 131 units to its subsidiary, Montgomery Estates. The litigation against Urban and the architects proceeded to arbitration. In 1987, a final judgment confirmed an arbitration award in favor of the Association and Augusta Holdings. The judgment, however, ordered that the Association and Augusta Holdings take nothing on their claims against the architects.

## D. This Suit

In March 1989, the Association filed this legal malpractice suit against LRK and Griggs & Harrison. The Association alleged the attorneys failed to timely sue the surety on the performance bond and failed to "accomplish service" on the architects. Based on these allegations of malpractice, the Association asserted causes of action for negligence, breach of contract, breach of warranty, breach of fiduciary duty, and violation of the DTPA. In February 1993, LRK filed its motion for summary judgment. On April 13, 1993, the trial court granted an interlocutory partial summary judgment in favor of LRK based on a lack of causation. The trial court also denied summary judgment on three alternate grounds asserted in LRK's motion.

The Association moved to set aside the partial summary judgment and LRK moved for reconsideration of the alternate grounds. The court ultimately denied these motions, severed the claims against Griggs & Harrison, and entered a final take-nothing judgment in favor of LRK. The Association then non-suited its malpractice claim relating to the architects. Following the denial of its motion for new trial, the Association perfected this appeal.

## II. THE STANDARD OF REVIEW

This is a summary judgment case. In five points of error, the Association contends the trial court erred in granting summary judgment based on a lack of causation. A movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). In deciding whether there is a disputed material fact issue precluding summary judgment, proof favorable to the non-movant is taken as true, with the court indulging every reasonable inference and resolving any doubts in favor of the non-movant. *Nixon*, 690 S.W.2d at 548–49; *Montgomery*, 669 S.W.2d at 310.

In other words, the issue on appeal is not whether the non-movant raised a material issue of fact precluding summary judgment; rather, the issue is whether the movant proved it was entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828–29 (Tex.1970). If the appellate court

finds the movant has not met its burden, it must reverse and remand the case for further proceedings. *Gibbs*, 450 S.W.2d at 828–29. To prevail on summary judgment, the defendant, as the movant, must establish as a matter of law all the elements of an affirmative defense or conclusively negate at least one element of the plaintiff's cause of action. *Montgomery*, 669 S.W.2d at 310–11; *Gibbs*, 450 S.W.2d at 828.

In the instant case, LRK moved for summary judgment on the following grounds: (1) LRK was not the cause of the Association's injury because limitations as set forth in the performance bond expired before LRK was retained; (2) LRK did not commit malpractice by failing to sue the surety because the Association lacked standing to sue on the bond as a mere assignee of the named obligee; (3) LRK did not commit malpractice by failing to sue the surety because the contractor, Urban, was never declared in default; and (4) the Association did not have standing to sue LRK for legal malpractice because it was never the client of LRK. The trial court granted summary judgment based on causation but denied summary judgment on the remaining grounds. Therefore, we will first address the causation issue.

## III. CAUSATION

LRK contends its failure to sue the surety in the prior litigation against Urban did not cause injury to the Association because limitations as set forth in the performance bond had expired before LRK was retained. The performance bond provides:

> Any suit under this bond must be instituted before the expiration of two (2) years and ten (10) days *from the date on which final payment under the contract falls due.* (emphasis added).

Under the unambiguous terms of the performance bond, suit on the bond had to be filed within two years and ten days of the date final payment under the construction contract fell due. Thus, to prevail on summary judgment, LRK was required to establish, as a matter of law, when final payment under the contract fell due. This requires interpretation of the construction contract itself. Despite this mandate, the construction contract was not properly presented to the trial court. Although the construction contract was incorporated by reference in the performance bond, neither party addressed or otherwise argued the specific terms of the contract in their summary judgment motion, response, or reply.[1]

■ A motion for summary judgment must stand or fall on the grounds expressly presented in the motion, without reference to briefs or summary judgment proof. *McConnell v. Southside School Dist.*, 858 S.W.2d 337, 341 (Tex.1993). Grounds not expressly presented to the trial court in a motion for summary judgment are waived on appeal. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex.1979). Likewise, issues a non-movant contends avoid summary judgment that are not expressly presented to the trial court by written answer or other written response to the summary judgment motion are waived on appeal. TEX.R. CIV. P. 166a(c); *City of Houston*, 589 S.W.2d at 677.

■ In this case, both parties failed to raise the proper contract issues below and thus failed to carry their summary judgment burden. This error, however, was fatal only to LRK, who, as the movant, bore the burden of negating an element of each of the Association's causes of action. *See City of Houston*, 589 S.W.2d at 678 (recognizing that sum-

---

1. In construing the limitations provision in the performance bond, LRK completely ignored the terms of the construction contract. Instead, it relied solely on case law interpreting article 5160(G) of the Texas Revised Civil Statues (now TEX. GOV'T CODE ANN. § 2253.078), which applies to performance bonds for public construction contracts and contains language that differs from that included in the performance bond in this case. *See e.g., Commercial Union Ins. Co. v. La Villa Indep. School Dist.*, 779 S.W.2d 102 (Tex. App.—Corpus Christi 1989, no writ); *Trans-*

*america Ins. Co. v. Housing Authority City of Victoria*, 669 S.W.2d 818 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). Likewise, in refuting LRK's argument, the Association referred generally to the construction contract but never properly presented a complete copy of the construction contract to the court nor advanced any of the specific contractual arguments now made on appeal. The trial court granted summary judgment, erroneously relying on LRK's argument and authority.

mary judgments must stand on their own merits and that the non-movant's failure to respond does not entitle the movant to summary judgment by default). Because LRK did not argue or prove when final payment under the construction contract fell due, as mandated by the express terms of the performance bond, LRK failed to conclusively establish that limitations set forth in the bond expired before it was retained by the Association. The Association's points of error one through five are therefore sustained.

By three cross-points, however, LRK contends the trial court erred in denying summary judgment on alternate grounds. The Texas Supreme Court has held that "a court of appeals should consider all summary judgment grounds the trial court rules on and the movant preserves for appellate review that are necessary for final disposition of the appeal...." *Cincinnati Life Ins.Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996). Because LRK properly preserved its complaint about the denial of summary judgment on alternate grounds, we now address those grounds.

### IV. STANDING AS AN ASSIGNEE

By cross-point one, LRK contends the trial court erred in denying summary judgment on the ground that the Association lacked standing to sue on the performance bond. LRK contends the Association has no cause of action for legal malpractice because under the plain terms of the bond, the Association, as a mere assignee of the named owner, Augusta Ltd., had no right of action against the surety.

■ The liability of a surety is determined by the language of the bond itself. *Geters v. Eagle Ins. Co.,* 834 S.W.2d 49, 50 (Tex.1992). The construction of a surety agreement is a question of law for the court. *G.H. Bass Co. v. Dalsan Properties–Abilene,* 885 S.W.2d 572, 576 (Tex.App.—Dallas 1994, no writ). Texas courts apply the rule of *strictissimi juris* ("of the strictest right or law") in interpreting guaranty and surety agreements to refrain from extending the

guarantor's or surety's obligation by implication beyond the written terms of the agreement. *See Vastine v. Bank of Dallas,* 808 S.W.2d 463, 464 (Tex.1991); *see also* BLACK'S LAW DICTIONARY 1422 (6 th ed.1990). This rule governs both uncompensated sureties and sureties for profit, but applies only when the ordinary rules of contract construction render the parties' obligations under the surety agreement uncertain.[2] *See Standard Acc. Ins. Co. v. Knox,* 144 Tex. 296, 184 S.W.2d 612, 615–16 (1945); *Balboa Ins. Co. v. K & D and Associates,* 589 S.W.2d 752, 758 (Tex.App.—Dallas 1979, writ ref'd n.r.e.); *New Amsterdam Causalty Co. v. Bettes,* 407 S.W.2d 307, 315 (Tex.App.—Dallas 1966, writ ref'd n.r.e.).

■ Here, the rule of strict construction is inapplicable because the parties' obligations under the bond are certain. The performance bond names only Augusta Ltd., as the obligee and owner, and Wells Fargo, as an additional obligee. While the Association alleges it acquired rights in the performance bond by assignment, the bond does not expressly authorize a right of action by an assignee of the named owner. Specifically, the bond provides:

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the heirs, executors, administrators or *successors* of Owner. (emphasis added).

Because there are no Texas cases construing a right of action clause in a performance bond, LRK relies on Georgia and Illinois appellate court cases that, on identical right of action clauses, have refused to extend a right of action to parties other than those expressly named in the clause. *See TRST Atlanta, Inc. v. 1815 The Exchange, Inc.,* 220 Ga.App. 184, 469 S.E.2d 238 (1996); *Southern Patrician Associates v. International Fidelity Ins. Co.,* 191 Ga.App. 106, 381 S.E.2d 98, 99 (1989); *Young v. General Ins. Co.,* 33 Ill.App.3d 119, 337 N.E.2d 739 (1975).

---

2. Ordinary rules of contract construction require us to ascertain the true intentions of the parties as expressed in the entire instrument. *See Hycarbex, Inc. v. Anglo–Suisse, Inc.,* 927 S.W.2d 103, 108 (Tex.App.—Houston [14 th Dist.] 1996, no writ) (citing *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983)).

In *Southern Patrician,* Southern contracted with CM to renovate a mall. 381 S.E.2d at 98. CM in turn subcontracted with R & M. *Id.* When CM went into bankruptcy before completion of the work, CM's surety assigned all of its rights and obligations under the general contract to Southern. *Id.* at 98. Southern terminated R & M for nonperformance and looked to R & M's surety, IFIC, to complete the work under the terms of its performance bond, which incorporated the subcontract. *Id.* When IFIC failed to respond, Southern filed for arbitration pursuant to a provision in the general contract, which was incorporated in the subcontract. *Id.* IFIC refused arbitration, asserting that Southern, as CM's assignee, had no right of action under the terms of IFIC's bond. *Id.* The court agreed. *Id.* at 99. Noting the inclusion of "assigns" in the general obligation clause in the bond and their exclusion from the right of action clause, the court concluded that the words "successors" and "assigns" have different meanings. *Id.* at 99. Because the bond specifically excluded assigns of the obligee from a right of action, the court refused to extend the surety's liability "by implication or interpretation." *Id.* at 99.

In *TRST Atlanta,* Barge–Wagener contracted to build a high-rise apartment building for Club Tower. 469 S.E.2d at 239. St. Paul furnished a performance bond on behalf of Barge–Wagener, the principal, and in favor of Club Tower, the obligee. *Id.* TRST, Club Tower's lender and alleged successor under the contract and bond, sued Barge–Wagener's successor for breach of contract and negligent construction. *Id.* It also sued St. Paul on the performance bond. *Id.* The trial court granted summary judgment for St. Paul, concluding that TRST was not the successor to Club Tower, the obligee on the bond. *Id.* The court of appeals affirmed, finding no summary judgment proof of a "duly authorized legal succession by which TRST had become invested with the rights and had assumed the burdens of Club Tower." *Id.* at 240. Relying on the holding in *Southern Patrician,* the court held that St. Paul's surety contract specifically excluded TRST, as a mere assignee of the obligee, from a right of action on the bond. *Id.*

In *Young,* SVMCB contracted with Transco to construct a building on land owned by SVMCB. 337 N.E.2d at 740. Transco subcontracted with Engelhardt. *Id.* Their subcontract incorporated by reference the general contract and required Engelhardt to furnish a performance bond to Transco. *Id.* at 741. General furnished the bond, which named Engelhardt as principal, Transco as obligee and incorporated by reference the subcontract. *Id.* Young, SVMCB's successor, sued on the bond claiming he was a third-party beneficiary under the bond and later, Transco's assignee. *Id.* Relying on the right of action clause, the court held that Young was not a third-party beneficiary and could not sue on the bond as Transco's assignee. *Id.* at 741–43.

The seventh circuit followed *Young* in *Rush Presbyterian St. Luke's Medical Ctr. v. Safeco Ins. Co.,* 825 F.2d 1204, 1205–6 (7th Cir.1987), holding that the right of action clause in a performance bond furnished by the subcontractor to the general contractor barred the owner from suing the surety, even though the owner was the disclosed principal of the general contractor, the named obligee on the bond. Other state appellate courts have similarly construed right of action clauses. *See, e.g., Stonecipher v. Mitchell,* 655 So.2d 1381, 1390 (La.App.1995); *Tony and Leo, Inc. v. United States Fidelity and Guaranty,* 281 N.W.2d 862, 864 (Minn.1979); *Stahlhut v. Sirloin Stockade, Inc.,* 568 S.W.2d 269, 273–74 (Mo.App.1978).

While we are not bound by these out-of-state decisions, we find them persuasive. In this case, the Association claims it could have sued the surety as the owner's assignee. The right of action clause in the performance bond limits a right of action to the owner's "heirs, executors, administrators or successors." It makes no mention of "assigns." In contrast, the general obligation clause, like those in *Southern Patrician* and *TRST Atlanta,* states that the "Contractor and Surety bind themselves their heirs, executors, administrators *successors and assigns,* jointly and severally, firmly by these presents." We therefore conclude that the parties to the performance bond, Aetna and Urban, did not

intend for the assigns of the owner, Augusta Ltd., to have a right of action on the bond. If they had, they would have included "assigns" in the right of action clause. Accordingly, LRK did not commit malpractice by failing to sue the surety on behalf of the Association, an assignee of the named owner.

■ The Association argues the performance bond is part of the construction contract, which is clearly assignable by its express terms.[3] According to the Association, the construction contract creates an ambiguity regarding an assignee's right of action under the bond.[4] This argument was not raised below and, therefore, is waived. Tex.R. Civ. P. 166a(c); *Bass Co.*, 885 S.W.2d at 576. In any event, even assuming the performance bond is among the "contract documents" and creates an ambiguity, the rule of strict construction requires an interpretation that favors the surety *See Vastine*, 808 S.W.2d at 464; *Empire Steel Corp. v. Omni Steel Corp.*, 378 S.W.2d 905, 911 (Tex. App.—Fort Worth 1964, writ ref'd n.r.e.) (where doubt and uncertainty exists as to the meaning of a surety agreement, the interpretation favorable to the surety will be adopted).

3. Section 7.2.1 of the construction contract states:

> The Owner and the Contractor each binds himself, his partners, *successors, assigns* and legal representatives to the other party hereto and to the partners, successors, assigns and legal representatives of such other party in respect to all covenants, agreements and obligations contained in the *Contract Documents.* Neither party to the Contract shall assign the Contract or sublet it as a whole without the written consent of the other, nor shall the Contractor assign any moneys due or to become due to him hereunder *without the prior written consent of the Owner.* (emphasis added)

We note that uncontroverted summary judgment proof shows that Augusta Ltd. never obtained Urban's written consent to an assignment as required by the language of this provision. The Association nevertheless argues the assignment was effective so long as the surety's rights were not prejudiced. *See Reuben Donnelley Corp. v. McKinnon*, 688 S.W.2d 612, 614–15 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) and *Traveler's Indem. Co. v. Dahlen*, 734 S.W.2d 729, 732 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). LRK has never claimed there was an ineffective assignment. Rather, it merely asserts

■ The Association asserts it could also have sued as a successor of Augusta Ltd., the named owner on the bond. We disagree. The exact meaning of the word "successor," when used in a contract depends largely on the kind and character of the contract, its purposes and circumstance, and context. *Procter v. Foxmeyer Drug Co.*, 884 S.W.2d 853, 861 (Tex.App.—Dallas 1994, no writ) (citing *Thompson v. North Texas Nat'l Bank*, 37 S.W.2d 735, 739 (Tex. Comm'n App.1931, holding approved)).

> As applied to corporations, a successor does not ordinarily connote an assignee, but is normally used in respect to corporate entities, including corporations becoming invested with the rights and assuming the burdens of another corporation by amalgamation, consolidation or duly authorized legal succession, and does not contemplate acquisition by ordinary purchase from another corporation....

*Procter*, 884 S.W.2d at 861; *International Ass'n of Machinists v. Falstaff Brewing Corp.*, 328 S.W.2d 778, 779 (Tex.Civ.App.—Houston 1959, no writ).

■ Here, the Association, a non-profit corporation, acquired rights in the construction contract solely by assignment. Namely,

that the owner's assignee has no right of action under the express terms of the performance bond. Thus, the effectiveness of the assignment is immaterial.

4. LRK asserts that in the absence of ambiguity in the performance bond itself, it is unnecessary to look to the construction contract to determine the extent of the surety's liability, even where the bond incorporates the construction contract by reference. *See Young*, 337 N.E.2d at 741. Texas case law suggests otherwise. *Great Am. Ins. .v. North Austin Mun. Util. Dist.*, 908 S.W.2d 415, 419 (Tex.1995) (surety's liability under performance bond is derivative of principal's liability); *Bass Co.*, 885 S.W.2d at 576 (surety's liability determined by surety agreement and lease to which the surety was a party); *Balboa Ins. Co. v. Snyder Consol. Indep. School Dist.*, 574 S.W.2d 879, 881 (Tex.Civ.App.—Eastland 1978, no writ) (surety's determined by bond and construction contract). *Parliament Ins. Co. v. L.B. Foster Co.*, 533 S.W.2d 43, 49 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.)(surety's liability to determined by bond and construction contract "that [was] expressly made part of bond"); *Arceneaux v. Price*, 468 S.W.2d 473, 474 (Tex.Civ.App.—Austin 1971, no writ)(surety's liability determined by personal services contract).

the Association was assigned the right to sue on all claims arising out of the construction contract. The Association did not succeed to those rights by consolidation or merger with Augusta Ltd., nor did it assume any of the obligations associated with Augusta Ltd.'s ownership of almost the entire development. In fact, Wells Fargo, not the Association, owns the majority of the individual units as a result of foreclosure.[5] The Association owns the raw land and common elements, but only as a result of the sale and conveyance from Montgomery Estates. Thus, the Association was not Augusta Ltd.'s successor within the definition stated above and could not sue the surety on the performance bond.

The Association argues the definition of successor as applied to corporations is inapplicable because Augusta Ltd. was a limited partnership, not a corporation. This is a distinction without a difference because a limited partnership, like a corporation, may assume the rights and obligations of another corporation or partnership by merger or exchange of interests. *See* TEX.REV.CIV. STAT. ANN. art. 6132a–1, § 2.11 (Vernon Supp. 1997); *see also* TEX. BUS. CORP. ACT ANN. art. 5.01, 5.02 (Vernon Supp.1997). Nevertheless, the Association urges it was a successor under the broader definition stated in *Thompson;* that is, "one that succeeds or follows; one who takes the place which another has left, and sustains the like part or character; one who takes the place of another by succession." *See Thompson,* 37 S.W.2d at 739; BLACK'S LAW DICTIONARY 1431 (6th ed.1990). Pursuant to this definition, the Association contends the "successor" is simply whoever took the place of Augusta Ltd. as owner of the Augusta Court Condominiums, whether by assignment or otherwise. We disagree. Under the *Thompson* definition, a "successor" is one who not only takes another's place, but also maintains the character of the place taken. It contemplates an assumption

of both rights and obligations or "stepping into the shoes" of another.[6] As we observed, the Association did not step into Augusta Ltd.'s shoes because it never owned the entire development and never assumed any of the obligations associated with such ownership. Rather, the Association was simply an assignee of Augusta Ltd.'s claims under the construction contract and an owner of only the land and common elements.

■ The affidavit of Deborah Behrend, Wells Fargo's assistant secretary, fails to raise a fact issue as to whether the Association was a successor. Her affidavit, which was attached to the Association's response, repeatedly refers to the assignment of rights in the construction contract. In addition, the documents attached to her affidavit purporting to transfer rights in the construction contract are each entitled, "ASSIGNMENT" and expressly refer to the "assignment" of such rights. Behrend nevertheless concludes that the Association is the successor to Augusta Ltd. Behrend's assertion is a mere legal conclusion, which is insufficient to raise a fact issue on a motion for summary judgment. *See Mercer v. Daoran Corp.,* 676 S.W.2d 580, 583 (Tex.1984).

Finally, the Association argues this case is controlled by *Enchanted Estates Community Ass'n, Inc. v. Timberlake Improvement Dist.,* 832 S.W.2d 800 (Tex.App.—Houston [1st Dist.] 1992, no writ). *Enchanted Estates,* however, is distinguishable. There, the court held a fact issue existed as to whether a homeowners association assumed the developer's rights and obligations so as to be the developer's successor under a contract between the developer and improvement district. 832 S.W.2d at 802–3. The court based its holding on deed restrictions giving the homeowners association the authority to contract with the improvement district, affidavits describing how the homeowners association succeeded to the developer's position

---

5. The fact the Association may represent individual homeowners in litigation, *see* TEX. PROP.CODE ANN. § 81.201 (Vernon 1995), does not mean, as the Association implies, that it has assumed their burdens of ownership.

6. The cases from other jurisdictions cited by the Association support the view that a "successor," as defined in *Thompson,* assumes the same rights and obligations of the prior party. *See Safer v. Perper,* 569 F.2d 87, 95–96 (D.C.Cir.1977); *Crown Oil and Wax Co. v. Glen Constr. Co.,* 320 Md. 546, 578 A.2d 1184, 1192 (1990); *Citizens Suburban Co. v. Rosemont Dev. Co., Inc.,* 53 Cal.Rptr. 551, 244 Cal.App.2d 666, 675–76 (1966).

with respect to the contract, and the fact that the homeowners association paid the improvement district's invoices. *Id.* Unlike this case, the homeowners association had assumed both rights and obligations under the contract at issue. Here, the Association's own pleadings and the summary judgment proof conclusively negate the existence of a fact issue regarding the Association's status as successor.

Based on the foregoing, we hold the Association lacked standing to sue on the performance bond and that LRK therefore did not, as a matter of law, commit malpractice by failing to sue the surety. *Cates* requires an appellate court to address only those alternate grounds "necessary for final disposition of the appeal." *Cates*, 927 S.W.2d at 626. Because the Association's lack of standing under the performance bond negates an essential element of the Association's claim, we need not address the issues raised in LRK's remaining cross-points. Furthermore, "rule 166a does not prevent an appellate court from affirming the judgment on other grounds the parties properly raised before the trial court, when the trial court grants summary judgment specifically on fewer than all grounds asserted." *Id.* at 625. Accordingly, the summary judgment in favor of LRK is affirmed on the alternate ground that the Association lacked standing to sue on the performance bond.

O'NEILL, J., concurs in the result only.