**Affirmed and Opinion filed September 6, 2012.**



In The

# Fourteenth Court of Appeals
_____

## NO. 14-12-00149-CV
_____

### BILLYE OLMSTEAD AKA BILLYE RYERSEN, Appellant

### V.

### ROY MICHAEL NAPOLI, AS INDEPENDENT EXECUTOR OF THE ESTATE OF ANTHONY JOHN CARONA AKA ANTHONY CARONA, DECEASED, Appellee

**On Appeal from the Probate Court**
**Galveston County, Texas**
**Trial Court Cause No. PR-0070577-A**

## OPINION

Billye Olmstead appeals from a summary judgment awarding the proceeds of an individual retirement account to Roy Napoli, the independent executor of the estate of Olmstead's former husband, Anthony Carona. Olmstead claims entitlement to the proceeds as the only surviving designated beneficiary of the account. Because Olmstead's divorce decree divested her of all rights related to the account, we affirm.

## BACKGROUND

Olmstead is the former wife of decedent Anthony Carona. Before their marriage, Carona opened an individual retirement account (IRA). On the IRA application form, Carona designated his father and Olmstead, then Carona's fiancée, as beneficiaries of the IRA. The form provided that in the event of Carona's death, the balance in the IRA would be paid half to each beneficiary, or completely to one beneficiary if the other did not survive Carona.

Over a year after the IRA was opened, Carona and Olmstead married. Nearly four years later, they divorced. The Agreed Final Decree of Divorce awarded particular property, including the IRA, to Carona as his sole and separate property. The Decree also divested Olmstead of "all right, title, interest, and claim in and to" the following:

> all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any . . . retirement plan . . . or other benefit program existing by reason of [Carona's] past, present, or future employment.

Even after his divorce and the death of his father, Carona never changed the IRA beneficiary designations.

Carona died in 2008, and Napoli was appointed the independent executor of Carona's estate ("the Estate"). The Estate sent a request to the IRA custodian, Extraco Bank, for disbursement of the IRA funds. When the Bank refused, the Estate filed this suit. The Bank filed a Counterpetion in Interpleader, notifying the trial court that Olmstead was listed as the beneficiary of the IRA and naming her as a counter-defendant. The Estate and Olmstead eventually filed trial briefs. The trial court determined that these briefs were in substance cross-motions for traditional summary judgment and treated them as such. Olmstead has not challenged this procedure on appeal.

2

In its summary judgment motion, the Estate argued that the divorce decree granted the IRA to Carona as his separate property and divested Olmstead of all rights to the IRA. In her motion, Olmstead argued: (1) section 9.302 of the Family Code, which voids certain spousal beneficiary designations upon divorce, is inapplicable to designations made prior to marriage; and (2) the divorce decree did not change Carona's designation of Olmstead as an IRA beneficiary. The trial court granted summary judgment in favor of the Estate and awarded the proceeds of Carona's IRA to the Estate. This appeal followed.

## DISCUSSION

Olmstead raises a single issue on appeal: whether the trial court erred in awarding the IRA account funds to the Estate because the Decree did not change Olmstead's status as the beneficiary of Carona's IRA account. Within this issue, Olmstead makes the same two arguments she raised below: (1) section 9.302 of the Family Code is inapplicable; and (2) the Decree did not change the IRA beneficiary designation.

## I.     Standard of review

We review a trial court's order granting traditional summary judgment de novo. *Mid-Century Ins. Co. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007). To be entitled to summary judgment, the movant must demonstrate that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). If the movant does so, the burden shifts to the non-movant to produce evidence sufficient to raise a fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996). When reviewing a summary judgment motion, we cannot read between the lines or infer from the pleadings or evidence any grounds for summary judgment other than those expressly set forth before the trial court. *Johnson v. Felts*, 140 S.W.3d 702, 706 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment

3

evidence and determine all questions presented. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). When, as here, the trial court's order granting summary judgment does not specify the grounds relied on for the ruling, the summary judgment will be affirmed if any of the theories advanced are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

## II. Olmstead's divorce decree divested her of all rights as an IRA beneficiary.

Olmstead first contends that section 9.302 of the Family Code does not divest her of her rights as the designated beneficiary of Carona's IRA.[1] Emphasizing the statute's use of the word "spouse," she argues that section 9.302 voids only beneficiary designations made after marriage, not designations like hers that were made prior to marriage. The Estate responds that section 9.302 does apply here because the relevant inquiry is whether the parties are spouses at the time they are before the court, not whether they were spouses at the time the IRA was created.

We need not resolve this dispute because we hold that in the parties' Decree, Olmstead agreed to forfeit all rights to the IRA that she may have possessed. Olmstead admits that the marital property agreement divested her of her community interest in the IRA, which became Carona's separate property. She observes that Carona could have

---

[1] Section 9.302(a) provides:

> If a decree of divorce or annulment is rendered after a spouse, acting in the capacity of a participant, annuitant, or account holder, has designated the other spouse as a beneficiary under an individual retirement account . . . in force at the time of rendition, the designating provision in the plan in favor of the other former spouse is not effective unless:

> (1) the decree designates the other former spouse as the beneficiary;

> (2) the designating former spouse redesignates the other former spouse as the beneficiary after rendition of the decree; or

> (3) the other former spouse is designated to receive the proceeds or benefits in trust for, on behalf of, or for the benefit of a child or dependent of either former spouse.

Tex. Fam. Code Ann. § 9.302 (West 2006).

removed her as a beneficiary after the divorce, but he did not do so. Therefore, Olmstead asserts, she is entitled to the proceeds of the IRA as the only living named beneficiary. In response, the Estate contends that the Decree also extinguished Olmstead's rights as an IRA beneficiary. We agree with the Estate.

Courts interpret marital property agreements in divorce decrees under the law of contracts. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986). Here, the parties' agreement provided that Carona "is awarded . . . as [his] sole and separate property" and Olmstead "is divested of all right, title, interest, and claim in and to . . . any and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to . . . [Carona's] retirement plan." We hold this language unambiguously terminated not only Olmstead's community property interest in the IRA, but also any right or claim Olmstead might have relating to the IRA, including any unmatured claim to future proceeds she might receive as an IRA beneficiary.

Other courts interpreting similar language have reached the same conclusion. In *Gillespie v. Moore*, a former wife sued the insurance company of her deceased former husband, claiming she was the beneficiary of his life insurance policy. 635 S.W.2d 927 (Tex. App.—Amarillo 1982, writ ref'd n.r.e.). The property settlement agreement in their divorce decree provided that the former husband "shall have and hold as his separate property" and the former wife "releases and transfers unto the [former husband] any and all interest and equities which she may have in and to [the policy], or the proceeds thereof, and agrees that she will in no event ever claim any interest in any of such policies or the proceeds thereof." *Id.* at 928. Before his death, the decedent did not remove his former wife as the designated beneficiary of his life insurance policy. *Id.*

The court of appeals held the former wife was not entitled to the proceeds of the life insurance policy. *Id.* It reasoned that a divorcing spouse who conveys an ownership interest in a policy does not necessarily lose the right to receive proceeds from that policy

5

as a designated beneficiary. *Id.* (citing *Partin v. de Cordova*, 464 S.W.2d 956, 957 (Tex. Civ. App.—Eastland 1971, writ ref'd); *Pitts v. Ashcraft*, 586 S.W.2d 685, 699 (Tex. Civ. App.—Corpus Christi 1979, writ ref'd n.r.e.)); *see also Parker v. Parker*, 683 S.W.2d 889, 890 (Tex. App.—Fort Worth 1985, writ ref'd). The latter right can be lost, however, if it is clear from the marital property agreement that the spouse also intended to surrender it. *Gillespie*, 635 S.W.2d at 928. Because the former wife specifically agreed she would in no event claim an interest in the policy or its proceeds, the settlement agreement unambiguously showed that she surrendered both ownership and beneficiary rights. *Id.*

The Decree in this case resembles the decree in *Gillespie* because it divested Olmstead of: (1) her ownership "interest" in any "sums" in the IRA, which became Carona's "separate property"; as well as (2) "all . . . interest, and claim in and to . . . the proceeds" of the IRA. On the second point, this Decree also goes further than the one in *Gillespie*, divesting Olmstead of all "right . . . and claim in and to any and all sums, whether matured or unmatured," and of "any other rights related to" the IRA. This language shows that Olmstead surrendered not only her ownership interest in the IRA, but also any unmatured claim to future proceeds she might receive as an IRA beneficiary.[2]

Another similar case is *Sanderlin v. Sanderlin*, 929 S.W.2d 121 (Tex. App.—San Antonio 1996, writ denied). In *Sanderlin*, the husband opened a retirement account through the Teacher Retirement System ("TRS"), naming his wife as beneficiary. *Id.* at 122. Soon thereafter, the couple divorced. *Id.* The marital property agreement in their divorce decree divested her of any interest in the retirement funds and proceeds, using language almost identical to the decree before us.[3] The court of appeals held that the

---

[2] Because the parties' Decree contains specific language that divests Olmstead of her rights, we need not address whether a decree that simply allocates an asset to one spouse as his separate property is sufficient to revoke a prior designation of the other spouse as a beneficiary of that asset. *Cf. Spiegel v. KLRU Endowment Fund*, 228 S.W.3d 237, 244-45 (Tex. App.—Austin 2007, pet. denied). In addition, we note that Olmstead has not argued that she was unaware of the beneficiary designation when she agreed to the Decree.

[3] "'The [former husband] is awarded . . . as [his] sole and separate property, and the [former wife]

6

agreement was "all-encompassing" and that the "intention of the parties with regard to [the former husband's] teacher retirement is clear": the former wife "is not to receive any of it." *Id.* Thus, any rights the former wife may have had as a result of the beneficiary designation were extinguished by the divorce decree. *Id.* at 122-23.

Olmstead points out that the Texas Supreme Court distinguished *Sanderlin* in *Holmes v. Kent*, 221 S.W.3d 622, 629 (Tex. 2007) (per curiam). But *Holmes* relied on a statute that was amended after the decision in *Sanderlin* to require that changes to a TRS beneficiary designation comply with certain statutory requirements. *Id.* That statute does not apply to Carona's IRA, which is a private investment unrelated to TRS. We therefore agree with *Sanderlin*, which focuses on the precise issue here: whether the divorce decree divested Olmstead of any right to the IRA proceeds as the designated beneficiary. *Sanderlin*, 929 S.W.2d at 122; *see also Beckham v. Beckham*, 672 S.W.2d 41, 42 (Tex. App.—Houston [14th Dist.] 1984, no writ) (focusing on intent of parties at time of divorce rather than at time beneficiary was designated).

Olmstead and the Estate also discuss *Keen v. Weaver*, 121 S.W.3d 721 (Tex. 2003), which the United States Supreme Court overruled in *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan*, 555 U.S. 285 (2009). Both cases addressed whether the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, precluded a former spouse from waiving an interest in a pension plan by signing a divorce decree. *See Kennedy*, 555 U.S. at 288; *Keen*, 121 S.W.3d at 722. In this case, we agree with both parties that ERISA does not apply to Carona's IRA. *See* 29 C.F.R. § 2510.3-2(d). Thus, neither *Keen* nor *Kennedy* affects our conclusion that Olmstead waived her rights as an IRA beneficiary.

---

is divested of all right title, interest and claim in and to . . . [a]ll sums, matured or unmatured, accrued or unaccrued, vested or otherwise, and all increases thereof, the proceeds therefrom, and from any other rights related to the [former husband's] retirement plan . . . .'" *Sanderlin*, 929 S.W.2d at 122 (quoting the decree).

## CONCLUSION

Because we construe the unambiguous language of the parties' marital property agreement as divesting Olmstead of all rights as an IRA beneficiary, we conclude the trial court did not err in granting summary judgment awarding the proceeds of the IRA to the Estate.

The judgment is affirmed.


/s/     J. Brett Busby
             Justice

Panel consists of Justices Frost, McCally, and Busby.