**Reversed and Remanded and Majority and Dissenting Opinions filed December 18, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00492-CV

---

### ROBERT PRIMO, Appellant

### V.

### GREAT AMERICAN INSURANCE COMPANY, Appellee

---

**On Appeal from the 281st District Court
Harris County, Texas
Trial Court Cause No. 2011-64653**

---

## M A J O R I T Y   O P I N I O N

Appellant Robert Primo appeals a summary judgment in favor of appellee Great American Insurance Company in his suit to recover under an insurance policy issued by Great American. Primo contends summary judgment was improper because (1) his claim does not fall within the scope of the policy's "Insured v. Insured" exclusion upon which Great American relied in the trial court; and (2) although he prevailed in seeking indemnity for some of his costs in another

lawsuit against a third party, because his petition in this lawsuit alleged injuries and damages that were neither litigated in nor essential to the judgment in the lawsuit in which he prevailed, collateral estoppel and the one satisfaction rule do not preclude his seeking further damages from Great American.

We hold that Great American did not establish as a matter of law that Primo's claim fell within the exclusion from coverage. We further hold that although collateral estoppel applied to preclude relitigation of the amount of Primo's reasonable and necessary attorney's fees in the prior lawsuit, Great American has not established as a matter of law that Primo has been fully satisfied for the damages he seeks in the current lawsuit. We therefore reverse the summary judgment and remand for further proceedings.

## BACKGROUND

There are many different lawsuits that set the stage for the case before us. The principal protagonists in this series of suits include Briar Green Condominium Association, its former officer and director Primo, and Briar Green's insurance companies.

Great American issued Briar Green Condominiums a Non-Profit Organization Executive Protection and Employment Practices Liability Insurance Policy ("E & O policy") covering "any proceeding initiated against an insured,[1] including any appeals therefrom." This policy, which is at issue here, excluded coverage for "any Claim made against any Insured . . . by, or for the benefit of, or at the behest of the **Organization**[2] or a **Subsidiary** or any entity which controls,

---

[1] The policy defined "Insured" to mean the organization and any subsidiary as well as all "insured persons." The definition of "insured persons" includes "all persons who were, now are, or shall be directors, trustees, officers, employees, volunteers, or staff members of" the organization or its subsidiaries.

[2] The policy defined "Organization" to mean "the entity named in Item 1 of the

2

is controlled by, or is under common control with the **Organization** or a **Subsidiary** or any person or entity which succeeds to the interest of the **Organization** or a **Subsidiary**."

In 2008, disputes arose regarding checks that Primo—who was serving as a director and the Treasurer of Briar Green Condominium Association at the time— had written himself from Briar Green's account. Briar Green's board of directors filed a claim for a final total of $115,558.77 on a fidelity bond Travelers Casualty and Surety had issued it, as well as a complaint with the Houston Police Department. Travelers paid Briar Green the $115,558.77, in exchange for which Briar Green assigned Travelers all of its claims and rights against Primo.

In July 2009, Travelers filed suit against Primo. Travelers alleged in its petition that Primo "used [Briar Green's] money for personal, self-benefitting expenses by making withdrawals from the ATM card [and] writing checks to himself and his family members;" that "[p]ursuant to the terms and conditions of the Bond, TRAVELERS paid BRIAR the sum of $115,558.77 for the loss incurred by BRIAR;" and that "[a]s the bonding company for BRIAR, TRAVELERS was assigned all rights to this matter, including recovery rights of the amount paid on the Bond." Travelers pled causes of action for fraud and fraud in the inducement, conversion, unjust enrichment, indemnity for payment on bond, theft of property, and breach of fiduciary duty in its petition. Travelers alleged as part of one of those causes of action—its indemnity for payment on bond theory—that it had "stepped into the shoes of the Association."

Primo retained counsel for the lawsuit[3] and filed third-party claims against

---

Declaration," which both parties agree is Briar Green.

[3] Primo initially retained Justin Perryman, but later replaced him with Porter Hedges LLP.

3

Briar Green for contractual indemnity for his defense costs in the suit. Travelers nonsuited its claims against Primo and the trial court dismissed Travelers' claims on November 5, 2010. Primo eventually non-suited his third-party claims, resulting in a final judgment in March 2011.[4]

Prior to the trial court's dismissal of Travelers' claims, in October 2010, Primo requested that Great American provide his costs of defense in the Travelers lawsuit under its E & O policy with Briar Green, contending he was covered under the policy as a former director and officer. Great American contended in a June 3, 2011 letter that there were "coverage issues pertaining to the reporting of the matter by Dr. Primo" but expressed a willingness to reimburse his reasonable and necessary costs of defense. Great American offered to reimburse Primo the full amount owed his first attorney, as reflected on submitted invoices. Great American also offered to reimburse Primo for $162,000 of the $201,631.77 reflected on the invoices from his subsequent counsel, citing a clause in the policy that precludes an insured from incurring costs of defense in connection with any claim without the insurer's prior approval.[5] Great American asserted that it was continuing "to reserve all of its rights and defenses under the Policy."

In June 2011, Primo filed a suit for contractual indemnity against Briar Green, alleging it had breached its bylaws by failing to indemnify him for costs incurred in defending the Travelers action.[6] Great American assumed Briar

---

[4] According to Primo, he instructed his lawyers to non-suit the claims in December 2010 but dismissal was actually filed in February 2011.

[5] Great American also asserted the reduction reflected consideration of, if not a specific deduction for, its belief that the invoices also reflected fees and costs incurred as part of Primo's third-party petition against Briar Green, which Great American felt it would not be required to reimburse under the E & O policy.

[6] The relevant bylaws provided that Briar Green would indemnify its officers for losses, including counsel fees, reasonably incurred in connection with any action, suit, or proceeding to which they are made a party by reason of their being an officer, except those for matters in which

4

Green's defense and, after invoking settlement procedures under Chapter 42 of the Texas Civil Practice and Remedies Code, offered Primo $300,000 to settle his claims. Primo rejected the offer and his damages were submitted to the jury for determination.

The jury in the Briar Green suit determined that a reasonable fee for the necessary services of Primo's attorneys in his suit against Briar Green was $55,124.84. The jury also determined that $102,598.97 "would compensate Robert Primo for his losses, costs, and expenses, including counsel fees, reasonably incurred by him in connection with any action, suit, or proceeding to which he was made a party by reason of his being or having been a manager or officer of Briar Green." The trial court reduced the awards based on the rejected settlement offer and signed a final judgment awarding Primo damages in the amount of $70,853.99 and attorney's fees in the amount of $29,340.90.

During the pendency of the Briar Green suit, Primo sued Great American in the cause before us, alleging unfair settlement practices in violation of the Texas Insurance Code, breach of the duty of good faith and fair dealing, violation of the Prompt Payment of Claims Act, breach of contract, fraud, and negligent misrepresentation. Primo sought "reimbursement for the defense costs and attorney's fees in the Travelers Suit," as well as exemplary damages and interest.

Primo alleged that as a direct result of a misrepresentation by a Great American employee, he was dissuaded to provide a written notice of claim to Great American, which caused him "to bear with his own savings the full cost of the extensive litigation expenses in the Travelers Suit." Primo alleged that discovering the existence of the coverage that should have prevented him from bearing those costs in advance of judgment "took an extraordinary effort and expense."

the officer is finally adjudged to be liable for gross negligence or willful misconduct.

5

After Primo obtained a final judgment in the Briar Green suit, Great American filed a traditional motion for summary judgment in this case, presenting two alternative grounds. First, according to Great American, Primo's suit was barred by the combination of collateral estoppel and the one satisfaction rule because he had already collected his defense costs and attorney's fees incurred in the Travelers suit as determined and awarded in the Briar Green suit.

Second, Great American alternatively contended it did not owe Primo a duty to defend him in the Travelers suit because that suit fell within the E & O policy's exclusion for claims between insured parties. Great American asserted the policy "excluded claims against any Insured by Briar Green and/or any entity which succeeded to Briar Green's interest, i.e., Travelers." In Great American's view, because Travelers alleged in its petition that it had been "assigned all rights" against Primo by Briar Green, all of Travelers' claims were brought as a successor to the interests of Briar Green.

Following a hearing held on March 28, 2013, the trial court granted Great American's motion for summary judgment and signed a take-nothing judgment on Primo's claims. The court's judgment stated that it had considered Great American's motion for summary judgment "and the supplement, response and reply thereto." The judgment stated that it was disposing of all matters pending before the court in the case. This appeal followed.

## ANALYSIS

Great American presented two grounds for traditional summary judgment in the trial court, and Primo's eight issues on appeal attack both grounds. We examine each ground in turn.

## I.    Standard of review

We review a trial court's grant of summary judgment de novo. *Lyda Swinerton Builders, Inc. v. Cathay Bank*, 409 S.W.3d 221, 229 (Tex. App.—Houston [14th Dist.] 2013, pet. filed). Summary judgment for a defendant is proper "when the defendant negates at least one element of each of the plaintiff's theories of recovery . . . or pleads and conclusively establishes each element of an affirmative defense." *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997) (internal citation omitted).

In a traditional motion for summary judgment, the defendant has the initial burden of "demonstrat[ing] that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law." *Lyda Swinerton Builders, Inc.*, 409 S.W.3d at 229. The burden then shifts to the non-movant plaintiff to produce evidence sufficient to raise a fact issue. *Id.* In reviewing a summary judgment, "we take as true all evidence favorable to the non[-]movant and we indulge every reasonable inference and resolve any doubts in the non[-]movant's favor." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). "Evidence is conclusive only if reasonable people could not differ in their conclusions." *Brown v. Hearthwood II Owners Ass'n Inc.*, 201 S.W.3d 153, 159 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

When the trial court does not specify the grounds on which it relied for its ruling, we will affirm the summary judgment if any grounds presented in the motion are meritorious. *Olmstead v. Napoli*, 383 S.W.3d 650, 652 (Tex. App.—Houston [14th Dist.] 2012, no pet.). As part of our review, we may not "read between the lines or infer from the pleadings or evidence any grounds for summary judgment other than those expressly set forth before the trial court." *Id.* "A summary judgment must stand or fall on its own merits, and the non[-]movant's

failure to except or respond cannot supply by default the grounds for summary judgment or the summary judgment proof necessary to establish the movant's right." *Brown*, 201 S.W.3d at 159.

## II. Great American failed to prove as a matter of law that Primo's defense costs incurred in the Travelers lawsuit were excluded from coverage under the E & O policy.

In his first issue, Primo attacks Great American's summary judgment ground that an exception to coverage applied. We conclude that Great American failed to prove as a matter of law that the E & O policy unambiguously excluded coverage for the claim brought by Briar Green's assignee, Travelers, by showing that the claim was made "by, or for the benefit of, or at the behest of . . . . any person or entity which succeeds to the interest" of Briar Green. Because the "Insured v. Insured" exclusion was Great American's sole ground for denying that coverage existed in its motion for summary judgment, we hold Great American failed to carry its burden to prove as a matter of law that the E & O policy did not provide coverage for Primo's costs of defense in the Travelers lawsuit.

### A. The existence of coverage under the E & O policy is an essential element of each of Primo's claims against Great American.

Primo's second amended petition[7] alleged that (1) Great American violated Texas Insurance Code sections 541.003 and 541.061 by making affirmative untrue statements of material fact relating to coverage in the Travelers suit; (2) Great American breached its duty of good faith and fair dealing; (3) Great American violated the Prompt Payment of Claims Act by delaying payment of his claim and not timely accepting or rejecting the claim; (4) Great American breached its contract, the insurance policy; and (5) Great American's employee committed fraud and made negligent misrepresentations by voluntarily producing a false and

---

[7] The trial court denied Primo's motion for leave to file a third supplemental petition.

misleading document to Primo.

An essential element of each of these causes of action is that coverage existed for Primo's claim seeking defense costs in the Travelers lawsuit or that his reliance on the alleged misrepresentations caused his damages. Regardless of whether Great American violated Insurance Code provisions, the private action under the Insurance Code for misrepresentations requires that the plaintiff's alleged damages be caused by the other person engaging in the act or practice. Tex. Ins. Code Ann. § 541.151 (West 2009). But if no coverage existed for Primo's claims for the costs of his defense in the Travelers lawsuit, then Great American's alleged misrepresentations as to coverage and delays in accepting or denying coverage would not have caused Primo to incur the costs of his defense. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) ("When the issue of coverage is resolved in the insurer's favor, extra-contractual claims do not survive."). Similarly, although the Prompt Payment of Claims Act is intended to expedite rejection of a claim as well as acceptance, liability for a violation is imposed on "an insurer *that is liable for a claim under an insurance policy*." Tex. Ins. Code Ann. § 542.060(a) (West 2009) (emphasis added); *see also Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (per curiam) (holding lack of coverage negates liability for violating requirements for prompt payment of claims). A claim for breach of contract based on Great American's denial of coverage would also require coverage for the claim. *See Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (listing "the existence of a valid contract" as an essential element of a breach of contract claim).

For these reasons, if Great American's motion for summary judgment conclusively negated the existence of coverage for the Travelers suit, Great

American negated an essential element of each of Primo's claims and summary judgment in its favor was proper. *See Sci. Spectrum, Inc.*, 941 S.W.2d at 911. We therefore turn to the question whether Great American conclusively negated coverage.

> **B.** **We review the pleadings in the Travelers suit to determine whether Travelers alleged facts unambiguously within the scope of the E & O policy's coverage.**

Relying on the eight corners rule, Great American contended in its motion for summary judgment that it had negated the existence of coverage because Travelers filed suit as Briar Green's assignee, and the suit therefore fell within the scope of the E & O policy's "Insured v. Insured" exclusion.[8]

In determining the scope of the policy's coverage, "[o]ur primary goal is to determine the contracting parties' intent through the policy's written language." *Page*, 315 S.W.3d at 527. We examine the entire agreement and seek to harmonize and give effect to all provisions of the policy so that none are rendered meaningless, useless, or inexplicable. *Gastar Exploration Ltd. v. U.S. Specialty Ins. Co.*, 412 S.W.3d 577, 583 (Tex. App.—Houston [14th Dist.] 2013, pet. filed). Terms are given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense. *Id.*

"Only if an insurance policy remains ambiguous despite these canons of interpretation should courts construe its language against the insurer in a manner

---

[8] Aside from denying the existence of coverage as a result of the exclusion, Great American did not present any grounds for summary judgment addressing the merits of Primo's claims. Great American contended in a post-submission letter to this Court that it made additional summary judgment arguments in the trial court regarding Primo's alleged extra-contractual claims and punitive damages. Although Great American did contend in the trial court that all of Primo's causes of action were contingent upon its purported breach of the E & O policy, Great American did not assert any basis for concluding as a matter of law that if Primo's claim was covered, it neither breached the E & O policy nor made misrepresentations regarding the policy.

10

that favors coverage . . . ." *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995). A policy provision is considered ambiguous if it is subject to two or more reasonable interpretations. *Page*, 315 S.W.3d at 527. In such a case, we "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991); *Gastar Exploration Ltd.*, 412 S.W.3d at 583. Thus, the contracting parties' "intent to exclude coverage must be expressed in clear and unambiguous language." *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 668 (Tex. 2008) (internal quotation marks omitted).

Under the eight corners rule, the insurer's duties to defend the insured are "determined by the claims alleged in the [underlying suit's] petition and the coverage provided in the policy." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009). The insurer's duty to defend depends on the presence in the petition of factual allegations that fall within the scope of the policy's coverage. *Id.* We review the underlying pleadings with a "focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged" to determine whether the claims fall within the scope of the policy's coverage. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam); *Huffhines v. State Farm Lloyds*, 167 S.W.3d 493, 497 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

The existence of coverage under the E & O policy in a suit against an "insured person" such as Primo therefore depends upon whether the petition states

11

claims within the exclusion for suits "made against any Insured . . . by, or for the benefit of, or at the behest of . . . any person or entity which succeeds to the interest of [Briar Green]." *See Pine Oak Builders, Inc.*, 279 S.W.3d at 654 (holding insurer's duty to defend is determined by allegations in the petition).

### C. Great American failed to prove as a matter of law that Travelers succeeded to the interest of Briar Green.

In its motion for summary judgment, Great American alleged that the Travelers lawsuit fell within the exclusion because "Travelers' petition only alleged facts excluded under the Policy." Although the "Insured v. Insured" exclusion itself does not address whether the person or entity must succeed to Briar Green's entire interest, its interest under the E & O policy, or solely its interest in the initiated proceeding, Great American contended Travelers was an entity that had unambiguously "succeed[ed] to the interest of [Briar Green]."

According to Great American's summary judgment motion, because the parties do not dispute that Travelers brought suit as Briar Green's assignee, "there should be no dispute that all of Travelers' claims against Primo were brought as a successor to the interests of Briar Green's rights against Primo."[9] We disagree.

---

[9] On appeal, Great American also emphasizes that Primo's live petition at the time of the summary judgment hearing acknowledged that "Travelers had pled standing by subrogation" and that Travelers alleged in its petition that it had "stepped into the shoes of" Briar Green. Great American thus contends it is undisputed that the petitions in the Travelers Suit alleged Travelers was a subrogee as well as an assignee of Briar Green, and therefore a successor in interest. Great American did not raise Travelers' allegation that it was Briar Green's subrogee as a ground for application of the "Insured v. Insured" exclusion in its motion for summary judgment, however. *Cf. Olmstead*, 383 S.W.3d at 652 (holding court will not read between the lines in determining what grounds are presented to the trial court in motion for summary judgment). Great American's reply to Primo's response to its motion for summary judgment, filed two days before the summary judgment hearing, does contend that "there should be no question that Travelers, as the assignee/subrogee, succeeded to the interest of Briar Green's rights against Primo." Yet neither its original motion for summary judgment nor its first supplement to its motion for summary judgment invoked Travelers' alleged subrogee status. We therefore do not consider whether Travelers pled sufficient facts to establish itself as Briar Green's subrogee or whether a

Strictly construing the exception against the insurer, as we must,[10] we hold that evidence of Briar Green's assignment of its claim against Primo to Travelers was insufficient to prove as a matter of law that Travelers was a successor to the interest of Briar Green.

We addressed the definition of successor in *Augusta Court Co-Owners' Ass'n v. Levin, Roth & Kassner*, 971 S.W.2d 119 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). There, an assignee alleged it acquired rights against the surety of a performance bond by virtue of the assignment of the bond, although "the bond [did] not expressly authorize a right of action by an assignee of the named owner." *Id.* at 123. Instead, the bond provided that "[n]o right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the . . . successors of Owner." *Id.* We determined that under the definition articulated in *Thompson v. North Texas National Bank*, 37 S.W.2d 735, 739 (Tex. Comm'n App. 1931, holding approved), a "successor" is "one that succeeds or follows; one who takes the place which another has left, and sustains the like part or character." *Augusta Court Co-Owners' Ass'n*, 971 S.W.2d at 126 (internal quotation marks omitted).[11] Under this definition, we concluded, the assignee was not a successor because succession occurs when a party "not only takes another's place, but also maintains the character of the place taken. It contemplates *an assumption of both rights and obligations* or 'stepping into the

---

subrogee would qualify as a successor to Briar Green's interest for purposes of the exclusion. *Cf. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d at 141 (holding that, under eight corners rule, focus is on underlying petition's factual allegations rather than legal theories).

[10] *See Evanston Ins. Co.*, 256 S.W.3d at 668.

[11] Our dissenting colleague faults us for seeking guidance from the meaning of the terms "successor" or "successor in interest." But Great American's own summary judgment motion described Travelers as a "successor," and we likewise perceive no unambiguous difference in this context between a "successor in interest" and an "entity which succeeds to the interest" of another. As we pointed out in *Augusta*, a "successor" is "one that succeeds."

13

shoes' of another." *Id.* (emphasis added). Other courts agree that a successor in interest to a corporate entity like Briar Green "does not ordinarily mean an assignee." *Sitaram v. Aetna U.S. Healthcare of N. Tex., Inc.*, 152 S.W.3d 817, 826 & n.7 (Tex. App.—Texarkana 2004, no pet.) (citing cases).

Here, Great American has not shown as a matter of law that the assignment upon which it relies creates a successor to Briar Green's interest under the *Thompson* definition, because Great American has not shown that Travelers assumed Briar Green's obligations as well as its claims and rights. *See Augusta Court Co-Owners' Ass'n*, 971 S.W.2d at 126. For example, Briar Green's bylaws required it to indemnify Primo to a certain extent, but it does not appear from the record that Primo could have asserted his claim for indemnification under the bylaws against Travelers.

Great American also has failed to identify any definition of "succeeds to the interest" in the policy itself that unambiguously includes assignees. In *Augusta*, we concluded not only that the assignee was not a successor under the *Thompson* definition, but that had the original parties to the performance bond intended mere assigns of the owner to have a right of action on the bond, they would have included the term "assigns" in the right of action clause. *Id.* at 124–25.

Here, neither the exclusion itself nor the E & O policy's definitions section designate Briar Green's assignees as persons or entities that "succeed[] to the interest of the Organization or a Subsidiary." Moreover, Briar Green's E & O policy contains a separate section addressing "Assignment,"[12] and that section does not provide that an assignee of Briar Green "succeeds to the interest" of Briar Green. In short, the parties used the concept of assignment when they meant to do

---

[12] The section provides solely that "[a]ssignment of interest under this policy shall not bind the **Insurer** until its consent is endorsed hereon."

14

so, and they did not use it in the "Insured v. Insured" exclusion.

The dissenting opinion points to a different section of the policy that limits coverage to wrongful acts before the effective date of any "Transaction," which occurs when "another organization acquires substantially all of the assets of the Organization [Briar Green], or the Organization merges into another organization, or the Organization ceases to qualify as a not-for-profit organization under the Internal Revenue Code." According to our dissenting colleague, this language shows that "succeeds to the interest" means something different from these other sorts of transactions. *Post*, at 5–6.

But the function of the Transaction section on which the dissent relies is to determine when the nature of the insured organization changes sufficiently that the insurer should have an opportunity to reevaluate its risk. We see no reason why it would matter to the parties to this insurance policy that a new organization participating in one of these transactions with Briar Green might or might not be considered a successor to the interest of Briar Green, depending on the form of the transaction.[13] Thus, we do not view the particular transactions described by the parties in this section as informing the meaning of the more general concept of succeeding to the interest, which is used for another purpose in a different part of the policy.

Yet even if the Transaction section provided relevant contextual clues, those clues would support the conclusion that one does not succeed to the interest of another by assignment. Here, Travelers only "acquire[d] . . . assets of [Briar

---

[13] For example, we agree with the dissent that a corporate merger is not the only way to create a successor to the interest of Briar Green. Under the *Thompson* definition and the language of the policy, it could be argued that either a person or an entity that acquires the subset of Briar Green's rights and obligations relevant to the matter at hand is a successor to the interest of Briar Green. We need not decide this question here, however, because there is no evidence in the record that Travelers acquired any of Briar Green's obligations to Primo.

15

Green]" in the form of Briar Green's claims against Primo. Thus, by the dissent's logic that succeeding to the interest must mean something different, Travelers did not succeed to the interest of Briar Green.[14] In any event, if the dissent were correct that the Transaction section weighs in favor of equating successor with assignee, this clue would not erase the contrary indications discussed above. Thus, it would not eliminate any ambiguity and entitle Great American to summary judgment. Great American also contends that because "Briar Green could not have brought a covered [c]laim against Primo, Briar Green could not have conveyed a covered claim against Primo to Travelers." But this contention misses the key point that Travelers brought the claim at issue, not Briar Green. Thus, the question under the plain language of the particular policy in question is whether the assignment was sufficient to make Travelers "succe[ssor] to the interest" of Briar Green, not whether a claim brought by Briar Green itself would have been excluded.

Moreover, the cases on which Great American relies for this contention address the defenses available against an assignee and thus have no application here. Great American cites the rule that generally "an assignee or subrogee walks in the shoes of his assignor." *Burns v. Bishop*, 48 S.W.3d 459, 466 (Tex. App.— Houston [14th Dist.] 2001, no pet.). *But cf. Augusta Court Co-Owners' Ass'n*, 971 S.W.2d at 126 (equating "stepping into the shoes of another" with "an assumption of both rights and obligations"). Under this rule, an assignee "receives the full rights *of the assignor*." *Jackson v. Thweatt*, 883 S.W.2d 171, 174 (Tex. 1994) (emphasis added). The assignee takes the rights, however, "subject to all defenses

---

[14] *See also Holland v. Williams Mountain Coal Co.*, 256 F.3d 819, 821–22 (D.C. Cir. 2001) (concluding that party acquiring property of a firm does not become the seller's successor in interest); *Sitaram*, 152 S.W.3d at 826 (holding term successor "does not contemplate acquisition by ordinary purchase from another corporation").

*which the opposing party* might be able to assert *against his assignor.*" *Burns*, 48 S.W.3d at 466 (emphasis added).

Thus, in *Jackson v. Thweatt*, although the state-law statute of limitations on promissory notes would have barred the lending banks' suits on the notes, the Federal Deposit Insurance Company ("FDIC") had acquired the notes as receiver and sold them to other parties. The Supreme Court of Texas held that these successors in interest to the FDIC could take advantage of a federal statute that extended the limitations period for the FDIC. 883 S.W.2d at 173–75. The Court explained that the FDIC, as possessor of the right, could transfer the extension incident to the asset to which it relates. *Id.* at 175. Because the maker of the promissory note would not have been able to assert the state-law statute of limitations as a defense against the FDIC, the court held he could not assert the expiration of the limitations period against the FDIC's assignee.[15] *Id.* at 173–75.

Here, in contrast, the "Insured v. Insured" exclusion is not a defense that Primo is asserting against Travelers as assignee of Briar Green. The ability to invoke the exclusion to deny coverage under the policy is a right that has always been held by Great American and has not been assigned. The cases on which Great American relies establish that an assignee (here, Travelers) takes its rights subject to all defenses the opposing party (Primo) might be able to assert against its assignor (Briar Green). *E.g. Burns*, 48 S.W.3d at 466. The cases do not address whether an assignment affects the defenses that a third party (Great American) could assert against the party that previously opposed the assignee (Primo) even though neither party participated in the assignment.

---

[15] The court referred to the purchasers of the notes interchangeably as the FDIC's assignees and as its successors in interest, without discussing the applicability of the terms. *See Jackson*, 883 S.W.2d at 174. We note that the FDIC itself acquired the notes when it was appointed the receiver for each of the banks, *id.* at 172–173, a status that required it to assume the banks' obligations as well as their rights. *See Scott v. Armstrong*, 146 U.S. 499, 507 (1892).

Moreover, the lack of coverage under the E & O policy for a claim brought by Briar Green directly against an officer like Primo does not arise from Briar Green's rights under the policy, but rather the officer's lack of rights against Great American under the policy when he is sued by certain parties. For example, it is difficult to imagine a scenario in which, absent the assignment to Travelers, Briar Green could rely on the "Insured v. Insured" exclusion to prevent Great American from assuming Primo's defense if Great American had chosen to provide one. Because Briar Green was not the possessor of the right to deny coverage, we fail to see how Briar Green could have transferred the lack of insurance coverage as a right incident to its claim against Primo. *Cf. Jackson*, 883 S.W.2d at 175 (holding the FDIC, as the possessor of the right to a statutorily provided extension of the limitations period, could transfer the right incident to the asset to which it relates).

Finally, Great American contends for the first time on appeal that Travelers' assignee claims "are the [e]quivalent of [c]laims [m]ade [b]y, or for the [b]enefit of, or at the [b]ehest of Briar Green, and are [t]hus [e]xcluded." Our dissenting colleague makes Briar Green's new contention the lead argument in her opinion, concluding that "the suit Travelers filed against Primo was a suit *by Briar Green*." *Post*, at 4. Because this ground was not presented in Great American's motion for summary judgment, however, it cannot support the trial court's ruling.[16] *See Olmstead*, 383 S.W.3d at 652.

---

[16] In its summary judgment motion, Great American did not argue that Travelers' claim should be excluded as a claim made "by . . . Briar Green." Rather, it argued that "all of Travelers' claims against Primo were brought as a successor to the interest of Briar Green's rights against Primo," and therefore the Insured v. Insured "exclusion unambiguously precludes coverage." Great American's reply confirmed that the "only relevant issues" presented in its summary judgment were its collateral estoppel and one-satisfaction argument (which we discuss below) and its argument that the "Travelers Suit [was] filed against Primo by an entity that succeeded to the interest of Briar Green's rights against Primo."

Moreover, the authorities on which the dissenting opinion relies confirm that the unique language of this particular "Insured v. Insured" exclusion does not unambiguously encompass assignments. As our dissenting colleague points out, a typical exclusion states simply that the insurer is not liable for claims made against an officer, director, or other insured by or on behalf of another insured or the company. *Post*, at 2. She notes that some courts and commentators have concluded such language reaches claims made by assignees of the company. *Id.* at 3 & n.2. For example, one court held that a clause excluding only claims made against a director or officer "by any Insured or the Company" applied to claims made against a director and officer by the company's assignee. *Niemuller v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 92 Civ. 0070 (SS), 1993 WL 546678, at *3 (S.D.N.Y. Dec. 30, 1993).

But the language of the exclusion here is different. Great American's policy excludes coverage for claims "made against any Insured . . . by, or for the benefit of, or at the behest of [1] [Briar Green] . . . *or* [2] any person or entity which succeeds to the interest of [Briar Green]" (emphasis added). The second part of this exclusion, which is absent from the typical exclusion, informs how far the first part can reasonably be read to extend. In particular, if the first part were interpreted broadly enough to exclude a claim by an assignee of Briar Green's right of action against an insured, then it would necessarily also exclude claims by those succeeding to Briar Green's rights and obligations regarding that insured. In that event, the second part of the exclusion—which reaches only this latter, narrower category of claims by successors to the interest of Briar Green—would become mere surplusage. That is not a reasonable interpretation of the exclusion. For these reasons, Great American has not shown as a matter of law that the E & O policy unambiguously excluded coverage for Primo's defense in the Travelers

lawsuit because Travelers was Briar Green's assignee. We therefore sustain Primo's first issue.[17]

**III.   Great American did not establish as a matter of law that all of Primo's claims are barred by the joint application of the collateral estoppel doctrine and one-satisfaction rule.**

Great American's remaining ground for summary judgment was that Primo's suit is barred by the combination of collateral estoppel and the one satisfaction rule because he has already collected his defense costs and attorney's fees incurred in the Travelers suit as determined and awarded in the Briar Green suit. Primo contends in his seventh and eighth issues that collateral estoppel does not bar him from litigating the amount of reasonable and necessary attorney's fees incurred in the Travelers suit, and that he has not been fully satisfied for all of the damages he seeks in the current suit. We conclude that collateral estoppel applies, but we agree with Primo that Great American has not carried its burden to show full satisfaction as a matter of law. Accordingly, this ground also cannot support the trial court's summary judgment.

**A.   Great American established as a matter of law that collateral estoppel bars relitigation of the costs and expenses Primo incurred in the Travelers lawsuit.**

The doctrine of collateral estoppel, also known as issue preclusion, "prevents relitigation of particular issues already resolved in a prior suit." *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992). The doctrine "serve[s] the vital functions of bringing litigation to an end, maintaining stability of court decisions, avoiding inconsistent results, and promoting judicial economy." *Calabrian Corp. v. Alliance Specialty Chems., Inc.*,

---

[17] Having concluded that Primo's first issue defeats Great American's sole summary judgment ground for denying coverage, we need not reach his second through sixth issues relating to coverage.

20

418 S.W.3d 154, 157–58 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Collateral estoppel is an affirmative defense and the party asserting it bears the burden of pleading and proving that "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994); *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 377 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding). "Whether collateral estoppel applies is a question of law for the court to decide." *James v. City of Houston*, 138 S.W.3d 433, 437 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

Here, Great American contended in its motion for summary judgment that Primo sought his attorney's fees and expenses for the Travelers suit in his lawsuit against Briar Green, and that in the course of the Briar Green suit the amount of those damages were fully and fairly litigated as a question essential to the judgment.[18] In particular, the Briar Green jury found the amount of money that would "compensate Robert Primo for his losses, costs, and expenses, including counsel fees" in the Travelers lawsuit. The trial court used this finding in calculating its judgment, which was for a reduced amount based on Primo's rejection of a settlement offer.

In his response to the motion for summary judgment, Primo challenged whether the facts relevant to the claims he raises in this case had been fully and fairly litigated in the Briar Green lawsuit. The facts Primo identified as distinct are

_____

[18] According to Great American, the amount of money that would "compensate Robert Primo for his losses, costs, and expenses, including counsel fees" in the Travelers lawsuit—which is what the Briar Green jury determined—is more than sufficient to compensate Primo for his costs of defense in the Travelers lawsuit given that he also prosecuted third-party claims in the Travelers lawsuit.

21

those pertaining to his allegations that Great American "misrepresented an active liability policy as expired in order to avoid performing on its contractual obligations" and did not timely accept, reject, or pay his claim for costs of defense in the Travelers lawsuit. Primo also contended that facts pertaining to the alleged policy misrepresentation and timely settlement of his claim were not essential to the adjudication of Briar Green's contractual indemnity under its bylaws.[19]

Even if true, however, the facts regarding Great American's alleged misrepresentations and the timing of its settlement offer are independent of the facts establishing Primo's "losses, costs, and expenses, including counsel fees" reasonably incurred in the Travelers lawsuit. Whether Primo was entitled to have Great American pay for those "losses, costs, and expenses, including counsel fees" during the lawsuit, or only after he was victorious in the lawsuit, would not alter the amount of "losses, costs, and expenses, including counsel fees" he actually incurred.

That amount was therefore fully and fairly litigated in Primo's lawsuit against Briar Green, and as explained above it was an essential part of calculating the judgment. We hold collateral estoppel bars Primo from relitigating the Briar

---

[19] Primo raised additional arguments against the application of collateral estoppel in his supplemental responses to Great American's motion for summary judgment filed on March 27 and April 5, 2013. These arguments included that in the lawsuit against Briar Green, his previous counsel from the Travelers suit did not testify as to their fees, his counsel in the Briar Green suit did not adequately advocate for the admission of a recording relating to the transactions for which Travelers had sought reimbursement from Primo, and the court permitted an expert witness who Primo felt was biased against him to testify. Because these arguments were not raised at least seven days before the summary judgment hearing occurred on March 28, and our record does not contain "an affirmative indication that the trial court permitted the late filing" as required by Texas Rule of Civil Procedure 166a(c), we do not consider the arguments. *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 663 (Tex. App.—Houston [14th Dist.] 2012, pet. denied). We therefore need not address whether collateral estoppel applies despite a party's dissatisfaction with his counsel's performance or the court's evidentiary rulings in the prior lawsuit.

Green jury's determination that $102,598.97 would compensate him for his "losses, costs, and expenses, including counsel fees" reasonably incurred in the Travelers lawsuit. *See Sysco Food Servs., Inc.*, 890 S.W.2d at 801; *In re H.E. Butt Grocery Co.*, 17 S.W.3d at 377. We therefore turn to the question whether the award in the Briar Green lawsuit has fully compensated Primo for the damages he alleged in the present case.

**B. Great American has not established as a matter of law that setoffs under the one satisfaction rule would bar all of the damages Primo seeks in this lawsuit.**

Great American contended in its motion for summary judgment that Primo's claims against Great American in this suit "are based on the same damages" Primo alleged and collected in his suit against Briar Green, and therefore the one satisfaction rule precludes a second collection of those damages. Great American's position hinges upon its assertion that the only damages sought by and available to Primo in the current lawsuit are his reasonable attorney's fees and expenses incurred in the Travelers suit.

As the movant for traditional summary judgment in the trial court, Great American had the burden to prove that there were no genuine issues of material fact that Primo's damages were the same in both lawsuits. We hold Great American has failed to carry that burden because it has not established that no genuine issues of material fact exist as to (1) whether Primo's attorney's fees in the Travelers lawsuits were the only actual damages resulting from the misconduct alleged in the current lawsuit, or (2) whether punitive damages and statutory penalties are potentially available to Primo.

"Under the one satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390

(Tex. 2000). The rule applies when "defendants commit technically different acts that result in a single injury." *Id.* "The rationale for this doctrine is that the plaintiff should not receive a windfall by recovering an amount in court that covers the plaintiff's entire damages" when he has already received partial compensation for the injury. *First Title Co. of Waco v. Garrett*, 860 S.W.2d 74, 78 (Tex. 1993). Otherwise, the plaintiff would "be recovering an amount greater than the trier of fact has determined would fully compensate for the injury." *Id.*

### 1. Great American failed to establish as a matter of law that Primo incurred no actual damages other than his attorney's fees in the Travelers lawsuit.

Although nothing in our record suggests that Great American filed special exceptions to Primo's allegations of damages, Great American contends that "Primo's only loss in the Travelers Suit was his defense costs." As summary judgment evidence, Great American submitted a transcript of portions of Primo's testimony in the Briar Green lawsuit. In that transcript, Primo testifies to the attorney's fees he incurred in various suits, admits that he was suing Briar Green for indemnity for the attorney's fees in the Travelers lawsuit, and takes the position that he is "entitled to every single penny [he's] ever spent in connection with these lawsuits." At no point in the transcript is Primo asked, nor does he say, whether the only damages he incurred were his attorney's fees in the Travelers suit.

To the contrary, Primo contends in his response to the motion for summary judgment that the damages incurred as a result of Great American's failure to provide his defense include the costs of his ongoing prosecution of legal malpractice claims against his former attorneys. According to Primo, the indemnity he received for his counsel's fees in the Travelers lawsuit is insufficient to compensate him for Great American's failure to provide a defense because that failure "transferred to [him] all the risks attached to selection of competent and

24

diligent counsel." Great American's summary judgment motion did not undertake to disprove Primo's entitlement to such damages as a matter of law.[20]

Great American also contends that "Primo's recovery *under the Policy* . . . is subject to the Policy's various terms, conditions and exclusions" and that the judgment in the Briar Green suit "entirely satisfies the maximum amount of liability claimed by Primo for his 'Defense Costs' *under the policy*." (Emphasis added). This contention is inapposite because Primo has also alleged extra-contractual claims such as fraudulent misrepresentation and breach of the duty of good faith and fair dealing, under which Great American's liability could potentially exceed or differ from its liability under the E & O policy itself. For these reasons, Great American's position that the judgment in the Briar Green suit fully compensated Primo for the fees and expenses he incurred in the Travelers suit—even if correct[21]—is insufficient to establish that no genuine issues of material fact exist regarding Primo's entitlement to other actual damages resulting from the claims alleged in this suit.

---

[20] Thus, we need not address whether Primo may ultimately recover such damages.

[21] Great American does not address the application of the one satisfaction rule to a situation where, as here, the trial court's judgment in the previous case reduced the damages found by the trier of fact based on the plaintiff's rejection of a settlement offer covered by Chapter 42 of the Texas Civil Practice and Remedies Code. *Cf. First Title Co. of Waco*, 860 S.W.2d at 78 (holding one-satisfaction rule bars litigants from "recovering an amount greater than the trier of fact has determined would fully compensate for the injury"). Because we hold Great American has not carried its burden to prove that the attorneys' fees and expenses Primo incurred in the Travelers suit were the only damages he sought in this suit, we need not decide whether Briar Green's payment of the judgment rendered against it for Primo's Travelers-related losses—the amount of which was much less than the losses found by the jury due to Primo's rejection of a settlement offer from Briar Green—would fully compensate Primo for the Travelers-related losses he seeks to recover from Great American in this suit.

## 2. Great American failed to establish as a matter of law that Primo cannot prevail on a cause of action that would support statutory penalties or exemplary damages.

Primo also alleged that he is entitled to recover statutory penalties and exemplary damages. Where insurance coverage exists, the Texas Insurance Code provides for the trebling of a plaintiff's actual damages if the trier of fact finds that the defendant knowingly committed a proscribed act or practice. Tex. Ins. Code Ann. §§ 541.151, 541.152(b) (West Supp. 2014). The Code also provides for damages in the amount of eighteen-percent interest per year for violations of the Prompt Payment of Claims Act. Tex. Ins. Code Ann. § 542.060.

In addition, exemplary damages may be awarded to a plaintiff who proves by clear and convincing evidence that the alleged harm results from fraud, malice, or gross negligence. Tex. Civ. Prac. & Rem. Code § 41.003 (West Supp. 2014). Exemplary damages may not be recovered for even a "malicious, intentional, or capricious" breach of contract, however, "unless a distinct tort is alleged and proved." *Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571 (Tex. 1981). The Supreme Court of Texas has not excluded the possibility that an insurer may be liable in tort when its "actions or inactions . . . [are] the producing cause of any damage separate and apart from those that would have resulted from a wrongful denial of the claim." *Provident Am. Ins. Co. v. Castañeda*, 988 S.W.2d 189, 198 (Tex. 1998). When a plaintiff proves both a distinct tort and that he suffered damages other than the loss of the benefits under the contract, exemplary damages may be recoverable. *See Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 666 (Tex. 1995).

Great American contended in its reply to Primo's response to its motion for summary judgment that (1) all of Primo's claims are premised upon its purported breach of the policy and do not allege independently tortious conduct; (2) even if

26

Primo alleged an independent tort, his only alleged actual damages are economic and benefit-of-the-bargain damages that will not support exemplary damages;[22] and (3) Primo failed to allege or produce a scintilla of evidence supporting a separate distinct tortious injury with actual non-economic damages.

Although we agree with Great American that all of Primo's claims are contingent upon the existence of coverage under the policy, it does not necessarily follow that his claims are premised solely upon the breach of the policy. For example, Primo alleged that Great American violated various provisions of the Texas Insurance Code. Although those provisions are contingent on the existence of coverage, it is possible that Great American could expose itself to statutory penalties under those provisions without breaching any terms of the E & O policy itself. *E.g.*, Tex. Ins. Code Ann. § 541.060(a)(1)–(4). Primo also alleged that Great American violated its duty of good faith and fair dealing, which is "a cause of action that sounds in tort, and is distinct from the contract cause of action for the breach of the terms of an underlying insurance policy." *Twin City Fire Ins. Co.*, 904 S.W.2d at 666. Finally, Primo alleged that Great American became liable for fraud, or alternatively negligent misrepresentation, when one of its agents falsely represented to Primo that Briar Green had not renewed its policy with Great American. These claims also carry the potential for liability without proof that Great American breached the E & O policy itself. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998) (listing elements of common-law fraud); *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439,

---

[22] On appeal, Great American additionally asserts that any common-law and statutory extra-contractual claims would fail on their merits because its reliance on the "Insured v. Insured" exclusion was a *bona fide* dispute concerning coverage. *Cf. State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 56 (Tex. 1997) ("Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith."). This ground does not appear in Great American's motion for summary judgment, however.

442 (Tex. 1991) (listing elements of negligent misrepresentation).

Great American's assertion that Primo's only actual damages from these alleged torts are benefit-of-the-bargain economic damages rests solely on its position that Primo's only actual damages are the attorney's fees he incurred in the Travelers lawsuit. As previously explained, however, Great American failed to establish as a matter of law that these were Primo's only actual damages, and our record does not indicate that Great American filed special exceptions requiring Primo to plead his actual damages with greater specificity. In addition, Great American failed to present conclusive evidence that its alleged actions or inactions were not "the producing cause of any damage separate and apart from those that would have resulted from the wrongful denial of the claim." *Provident Am. Ins. Co.*, 988 S.W.2d at 198. Great American therefore failed to establish as a matter of law that exemplary damages are unavailable because the only actual damages submitted to the jury under Primo's claims would be benefit-of-the-bargain damages.

Instead, Great American relies on Primo's failure to allege or introduce evidence of damages separate and apart from the loss of his benefits under the contract. But Great American filed only a traditional motion for summary judgment, and therefore it had the burden to prove that no genuine issues of material fact existed regarding Primo's entitlement to exemplary damages. *Compare* Rule 166a(c) *with* Rule 166a(i). Only then would the burden shift to Primo to produce evidence that would raise a genuine issue of fact regarding his entitlement to exemplary damages. *Lyda Swinerton Builders, Inc.*, 409 S.W.3d at 229. Having failed to carry its own burden, Great American cannot shift the burden to Primo to produce evidence to support a separate distinct tortious injury with distinct actual damages. *See Brown*, 20 S.W.3d at 159 (holding that non-

28

movant's "failure to except or respond cannot supply by default the grounds for summary judgment or the summary judgment proof necessary to establish the movant's right").

Because Great American failed to show that there are no genuine issues of material fact whether Primo has suffered actual damages separate from or greater than his attorney's fees in the Travelers suit, or whether those damages differ from the loss of the benefits under the E & O policy, Great American did not prove its entitlement to summary judgment on the ground that Primo has been fully satisfied for all of the damages he seeks in the current lawsuit. We therefore sustain Primo's seventh issue.

## CONCLUSION

We hold that Great American failed to show as a matter of law that the E & O policy's "Insured v. Insured" exclusion barred coverage of Primo's costs of defense in the Travelers lawsuit given Travelers' status as Briar Green's assignee. We also hold that although collateral estoppel applies, Great American failed to establish as a matter of law that its alleged conduct caused Primo no actual damages other than his attorney's fees in the Travelers suit, or that its alleged conduct was not independently tortious and capable of causing damages distinct from Primo's loss of the benefits of the insurance policy. Because neither of the grounds raised by Great American supports the trial court's summary judgment, we reverse the judgment of the trial court and remand the case for further proceedings.

/s/ J. Brett Busby
        Justice

Panel consists of Justices McCally, Busby, and Donovan (McCally, J., dissenting).

29